In the Matter of GOLF, L.L.C., Skyline Woods Country Club, L.L.C., Fox Run Properties, L.C., Lakeview Golf, L.L.C., Debtors.

Nos. BK01–80563 to BK01–80566.

United States Bankruptcy Court, D. Nebraska.

March 22, 2004.

Trenten P. Bausch, Blackwell, Sanders, Peper, Martin LLP, Omaha, NE, Richard M. Beheler, Blackwell, Sanders, Peper, Martin LLP, Kansas City, MO, Charles E. Benish, Koley Jessen P.C., Omaha, NE, Penny J. Berger, Rembolt, Ludtke & Berger, Lincoln, NE, Craig J. Bolton, Phoenix, AZ, Hilary B. Bonial, Brice, Vander Linden & Wernick, Dallas, TX, Emmett D. Childers, Hillman, Forman, Nelson, Childers, Omaha, NE, Joseph M. Colaiano, Omaha, NE, Christopher D. Curzon, Dwyer, Smith, Garner, Lazer, Pohren, Omaha, NE, Richard P. Garden, Jr., Cline, Williams, Wright, Johnson, Lincoln, NE, Jerry L. Jensen, U.S. Trustee's Office, Omaha, NE, Larry A. Jobeun, Fullenkamp Doyle & Jobeun, Omaha, NE, John J. Jolley, Jr., Kutak Rock, Omaha, NE, Myron J. Kaplan, Omaha, NE, David J. Koukol, Dwyer, Smith, Gardner, Lazer, Pohren, Omaha, NE, Steven H. Krohn, Smith Peterson Law Firm, LLP, Council Bluffs, IA, Brian S. Kruse, Lincoln, NE, Rick D. Lange, Rembolt, Ludtke & Berger, LLP, Lincoln, NE, Clifford T. Lee, Rasmussen & Mitchell, Omaha, NE, Deanna L. Longo, Houston, TX, Thomas L. Saladino, Fitz-

gerald, Schorr, Barmettler & Brennan, Omaha, NE, Jeffrey L. Shields, Salt Lake City, UT, Charles L. Smith, Telpner, Peterson, Smith, Ruesch, Council Bluffs, IA, Donald L. Swanson, Koley Jessen P.C., Omaha, NE, Steven C. Turner, Baird Holm Law Firm, Omaha, NE, Jeffrey T. Wegner, Kutak Rock LLP, Omaha, NE, Tanya Marie Morrison, Blackwell Sanders Peper Martin, Omaha, NE, Michael J. Whaley, Gross & Welch, PC, Omaha, NE, Megan Sebastian Wright, Blackwell, Sanders, Peper, Martin, LLP, Omaha, NE, for creditors.

Tanya Marie Morrison, Blackwell Sanders Peper Martin, Omaha, NE, Robert V. Ginn, Brashear & Ginn, Omaha, NE, for debtors.

James B. Cavanagh, Lieben, Whitted, Houghton, Slowiaczek, Omaha, NE, pro se.

Douglas E. Quinn, McGrath, North, Mullin & Kratz, P.C., Omaha, NE, for Creditors Committee.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on March 18, 2004, in Omaha, Nebraska, before a United States Bankruptcy Judge for the District of Nebraska regarding Filing No. 444, Motion to Sell Certain Operating Assets Outside the Ordinary Course of Debtors' Business Pursuant to an Asset Purchase Agreement, filed by the debtors; Filing No. 450, Objection by Business Mens Assurance Co. of America; and Filing No. 451, Objection by Detente, L.L.C. Robert Ginn appeared for the debtors, Douglas Quinn appeared for the Creditors Committee, Richard Beheler and Trent Bausch appeared for Business Men's Assurance Co. of America and General Security Corporation of America, Jeffrey Wegner appeared for Detente, L.L.C., Michael Washburn appeared for Nebraska State Bank, and Patricia McCormick appeared for American National Bank. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(N).

Golf, L.L.C., and Lakeview Golf, L.L.C., and the other related entities listed in the above heading, filed a Second Amended Plan of Reorganization, Filing No. 335, which was confirmed on February 10, 2003, at Filing # 395. The order of confirmation was not stayed, and became final. The effective date of the plan was, pursuant to Section 1.32 of the Second Amended Plan, ten days after the confirmation order was entered. The confirmed plan, at Section 10.1(f) on page 32, provides for the retention of jurisdiction by the Bankruptcy Court "[t]o hear and determine any and all pending or future applications for approval of the sale of the Assets or any portion thereof, free and clear of all liens pursuant to § 363 of the Bankruptcy Code[.]"

On January 26, 2004, at Filing No. 444, the reorganized debtor filed a motion to sell certain of its operating assets outside the ordinary course of business pursuant to an asset purchase agreement. That motion requests the court to approve a sale of the real estate assets and personal property inventory assets of debtor Lakeview Golf, for $1 million, free and clear of all liens. The motion drew two objections, each of which was filed by real estate lien creditors. On the date of the hearing on the motion and objections, the objection filed by General Security Corporation of America, assignee of Business Men's Assurance Company of America ("BMA"), was settled on the record. However, the objection filed by Detente, L.L.C., ("Detente") was not settled. Arguments were presented, evidence was taken and briefs

were filed, and the court took the matter under advisement.

■ The motion, Filing No. 444, is denied, for the following reasons:

1. This motion is brought before the court pursuant to 11 U.S.C. § 363(f) which provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

■ Generally, Section 363(f) is used by a debtor-in-possession or a trustee during the pendency of a bankruptcy case and before confirmation. It allows the debtor, under certain circumstances, to downsize its operation and eliminate non-performing assets. The cases which deal with this section of the Bankruptcy Code are uniform with regard to the invocation of 11 U.S.C. § 363 during the pendency of a case and prior to confirmation. Post-confirmation sales of assets are accomplished pursuant to terms of the confirmed plan, or, since the debtor is generally outside of the jurisdiction of a bankruptcy court within a short period of time after confirmation of a plan, such sales are accomplished pursuant to non-bankruptcy law.

Some authors note the distinction between the purposes of § 363 and §§ 1123 and 1141, observing that § 363(b) and (f) control asset sales prior to plan approval and require less notice and opportunity for hearing than § 1123(a)(5)(D) and § 1141(c), which govern sales made pursuant to a plan. George W. Kuney, *Misinterpreting Bankruptcy Code Section 363(f) and Undermining the Chapter 11 Process,* 76 Am. Bankr.L.J. 235, 236 (Spring 2002). However, as a practical matter, current practice seems to have expanded § 363(f)'s use from its original intent. *Id.*

In this case, the debtor proposes, post-confirmation, to invoke Section 363. The confirmed plan does not mention even the possibility of the sale of this asset, except to the extent that the jurisdiction retention provision enumerated above implies that since the court retains jurisdiction to supervise Section 363 sales, such sales must have been contemplated by the plan and authorized by the confirmation order. It appears to the undersigned that this court has no continuing jurisdiction with regard to the type of sale that is before the court, because Section 363(f) is not operational once the plan is confirmed.

2. However, assuming for the moment that the court does have jurisdiction and that Section 363(f) sales may be approved post-confirmation, this proposed sale nonetheless is not approved. It does not meet the requirements of Section 363(f). Detente, the objecting creditor, holds a lien by virtue of a deed of trust on the Lakeview Golf real estate. Although the movant suggests that Detente's rights with regard to enforcement of the lien did not arise until a date certain in the future, and are subordinate to payment of administrative claims and other provisions of the confirmed plan, such provision by the movant ignores the plain terms of the confirmed plan.

■ Paragraph 5.11 of the confirmed plan deals with the interests of holders of "C" Shares of Golf. The members of Detente were some of the holders of such shares. The members of Detente, however, are participants in what is identified in the plan as the "GWR Compromise." Paragraph 5.11 provides that the holders of Class 11 Interests, other than the accepting shareholders as that term is defined in the GWR Compromise, "shall neither be paid nor receive any compensation, nor retain any property rights, with respect to such Interests unless, and until, all Administrative Claims, Priority Claims, Class 6 Claims and Class 7 Claims have been paid in full, and the Debtor is in compliance will all other material provisions of this Plan". The members of Detente, L.L.C., have been excluded from the limitations on their rights by the plain language of the confirmed plan. Therefore, they have lien rights at this time and have standing to object to the proposed sale and to raise issues concerning the requirements of Section 363(f).

■ 3. Detente suggests that the proposed sale is barred by the plain language of 11 U.S.C. § 363(f)(3) because the sale price is not greater than the aggregate value of all of the liens on such property. Detente suggests that the term "aggregate value" means the face amount of the debts secured by the real estate. Since the face amount of the debts, including those held by BMA or its assignee, and the debt held by Detente, secured by the Deed of Trust, far exceed the sale price, the sale is prohibited. There is a split of authority with regard to whether Detente's position is correct or whether the movant's position that the term "aggregate value" means "value of the lien as determined under Section 506(a)" is correct. This court does not need to add its opinion to the split of authority because, even if the movant is

correct, the sale cannot be approved under this section.

As noted by the Seventh Circuit Court of Appeals in dicta, the traditional rule holds that there is no reason to approve a sale free and clear of liens unless the proceeds will fully compensate the secured lien holders and produce some equity for the benefit of the estate. *In re Riverside Inv. P'ship,* 674 F.2d 634, 640 (7th Cir. 1982). *See also Scherer v. Federal Nat'l Mortgage Ass'n (In re Terrace Chalet Apartments),* 159 B.R. 821, 826 (N.D.Ill. 1993); *Rouse v. Federal Land Bank Ass'n (In re Rouse),* 54 B.R. 31, 32–33 (Bankr. W.D.Mo.1985).

In this case, the sale under the terms proposed by the movant will benefit only some of the lien holders, and there will be no benefit to the Chapter 11 unsecured creditors or to any other entity except the administrative claimants. There is no reason to approve a sale which does not benefit any creditor of the estate and which places the administrative claimants ahead of secured lien holders.

4. The sale also cannot be approved because it attempts to change the priority with regard to payment of claims. The motion suggests that after the first lien holder is paid and the lien holder on inventory receives a compromised amount, the balance will be used to pay administrative claimants. As mentioned above, such a proposal changes the priority scheme of the Bankruptcy Code to the detriment of Detente, a creditor secured by the real property which is being sold. Such a sale cannot be approved.

5. There is insufficient evidence before the court to convince the court that the sale price is fair and in the best interest of the estate. Although during oral argument, counsel for the movant suggested that there had been significant attempts to sell the property, there is no evidence

before the court concerning the manner in which the property was attempted to be marketed or the length of time the marketing took place. Therefore, the court cannot make a finding concerning the fairness of the sale price.

For any and all of the above reasons, the motion to sell is denied.

A separate order denying the motion shall be entered.