**In the Matter of G–P PLASTICS, INC., Debtor.**

**Eric Slone, not individually but as Liquidating Agent, Plaintiff–Appellant,**

v.

**M2M International, Inc., Defendant–Appellee.**

**Nos. 00–58064, 04–70273.**

United States District Court, E.D. Michigan, Southern Division.

Feb. 7, 2005.

---

Jerome D. Frank, Frank & Frank, Farmington Hills, MI, for Plaintiff.

Ryan D. Heilman, Schafer & Weiner, Bloomfield Hills, MI, for Defendant.

## ORDER

JULIAN ABELE COOK, JR., District Judge.

The Plaintiff–Appellant, Eric Slone, acting as the liquidating agent of the Debtor, G & P Plastics, Inc. ("G & P"), appeals the entry of a summary judgment by the United States Bankruptcy Court in the Eastern District of Michigan in favor of the Defendant–Appellee, M2M International, Inc. ("M2M"). It is Slone's contention that the bankruptcy court erred when it concluded that (1) his quest for, inter alia, the recovery of an allegedly preferential payment to M2M is barred by the res judicata doctrine and (2) G & P's "Amended Combined Plan of Reorganization and Disclosure Statement" did not preserve his claims against M2M. For the reasons that are stated below,[1] the Court agrees with the decision by the bankruptcy court and, hence, the entry of a summary judgment in favor of M2M is affirmed.

## I.

The facts that are relevant to this appeal are largely undisputed. G & P, a subsidiary of Imhold, Inc., was a supplier of molded plastic parts to the automobile industry before it ceased operations in July 2001. This controversy arose after M2M, a manufacturer of molds, entered into a contractual relationship with G & P whereby it agreed to build insert replacements for a molded plastic part, known commercially as a "C tool."

On November 28, 2000, G & P filed a petition for Chapter 11 bankruptcy protection.[2] On September 27, 2002, Judge Walter Shapero confirmed an Amended Combined Plan of Reorganization and Disclosure Statement ("the Plan") that had been proposed by the Unsecured Creditors' Committee of the Debtor. This Plan provided for the liquidation of G & P and the appointment of Eric Slone, the Chief Financial Officer of G & P, as the agent who was given the responsibility of receiving and disbursing the proceeds of the liquidation.

Exactly two years after the bankruptcy filing, Slone, acting as the liquidating agent of G & P, filed a lawsuit against M2M, seeking to recover (1) the sum of $118.441.60 which he characterized as an alleged preferential payment by G & P, and (2) the G & P molds. However, his demand was rejected. On February 23, 2003, Slone amended his Complaint by adding claims against M2M for fraudulent conveyance, breach of contract, unjust enrichment, and conversion.

On December 1, 2003, M2M filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56(c), contending that (1) G & P did not retain any of the causes of action within Slone's Complaint after the confir-

---

1. Pursuant to E.D. Mich. LR 7.1(e)(2), the Court has decided to resolve Slone's appeal on the briefs without the necessity of oral arguments by the parties.

2. M2M, acting on the basis of its contract with G & P, acquired possession of the "C tool" from G & P prior to the filing of the bankruptcy petition. However, M2M's obligations under this contract had not been fulfilled on November 28, 2000, the date on which the petition was filed.

mation of the Plan under 11 U.S.C. § 1123(b), (2) Slone lacked standing in this action because he had not received any authority from G & P or the Bankruptcy Court to bring these claims on behalf of the Debtor, and (3) Slone's claims were barred by res judicata as the result of to the confirmation of G & P's Plan.

On January 13, 2004, Judge Marci McIvor granted M2M's motion, after concluding that (1) Slone's claims were barred by res judicata, and (2) the Plan did not preserve his claims against M2M. This appeal followed.

## II.

Bankruptcy Rule 8013, which sets forth the standard of review to be applied by district courts with respect to bankruptcy appeals, reads:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

On the basis of this Rule, the Court must accept Judge McIvor's findings of fact unless they are found to be clearly erroneous. *Id.* However, her conclusions of law are not entitled to the same deference and are subject to de novo review. *In re Batie,* 995 F.2d 85, 88 (6th Cir.1993).

A motion for summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Hence, the burden is upon M2M to demonstrate the absence of a genuine issue of a material fact. *See Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In assessing this dispositive motion, the Court must examine all pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R.Civ.P. 56(c); *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Although this Court must not weigh the facts, *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435–36 (6th Cir.1987), it has an obligation to determine "whether ... there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Hence, the moving party is entitled to show that a genuine factual issue is lacking if it can (1) present evidence which is sufficient to make the issue "so one-sided that [they] must prevail as a matter of law," *id.* at 252, 106 S.Ct. 2505, or (2) point to a failure by the non-moving party to present evidence "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. Upon such a showing, the non-moving party must act affirmatively to avoid the entry of a summary judgment. Fed. R.Civ.P. 56(e). Significantly, a mere scintilla of supporting evidence is insufficient. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505, *quoted in Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989).

## III.

Under Section 1141(a) of the Bankruptcy Code, "the provisions of a con-

firmed plan bind the debtor" and all other parties to a bankruptcy proceedings. 11 U.S.C. § 1141(a). Thus, a confirmed plan "has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir.1991). Moreover, a party is precluded from asserting any post-confirmation claims that were not adequately preserved in the Plan. *See In re I. Appel Corp.*, 300 B.R. 564, 566 (Bankr.S.D.N.Y.2003). Initially, Slone challenges the conclusion of the bankruptcy court that his claims are precluded by the doctrine of res judicata.[3]

█ It is clear from this record that the confirmation by the bankruptcy court of G & P's Amended Combined Plan of Reorganization and Disclosure Statement constitutes a "final judgment in bankruptcy proceedings." *In re Browning*, 283 F.3d 761, 772 (6th Cir.2002) (internal citations omitted); *see also In re Chattanooga*, 930 F.2d at 463. As such, the first element of the res judicata doctrine has been satisfied.

█ However, Slone mounts his most vigorous challenge to the res judicata question as it relates to the second factor; namely, the identity of the parties which requires M2M to demonstrate that it is the same party or privy to the Chapter 11 proceeding. *Bittinger*, 123 F.3d at 880.

It is undisputed that a creditor of the debtor qualifies as a party for res judicata purposes. *Sanders*, 973 F.2d at 480–81;

*see also* 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind the debtor ... and any creditor whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor has accepted the plan"). Nevertheless, Slone contends that M2M does not qualify as a creditor because it does not have a viable claim against G & P.

Section 101(10)(B) of the Bankruptcy Code defines a creditor as any "entity that has a claim against the estate of any kind specified in section ... 502(h) ... of this title." Section 502(h), in turn, provides that "[a] claim arising from the recovery of property under section 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition." Since neither of these two sections define a "claim," this Court will apply the general definition of this word, as found in the Code. According to the United States Code, a "claim" is defined as a right to payment, even if it is "liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5).

Based on this statutory language, the Court finds that M2M qualifies as a creditor and, as such, it was an interested party in the Chapter 11 bankruptcy proceedings. When the Plan was confirmed, M2M maintained its status as a creditor even though it had received a payment under its con-

---

**3.** The four elements of res judicata are (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir.1997). According to the Sixth Circuit Court of Appeals, the doctrine of res judicata "promote[s] the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir.1992).

tract from G & P. These monies remained subject to a recovery by G & P as a preferential payment in the event if it filed a bankruptcy petition under 11 U.S.C. § 547(b). Thus, in accepting these monies, M2M became a creditor of the Debtor and, by virtue thereof, became a holder of an unliquidated, unmatured, and contingent right to the payment (i.e., a "claim" for reimbursement) that G & P could have avoided during bankruptcy proceedings. The word, "creditor," has been interpreted to include those entities with unmatured or contingent claims. *See Hassett v. Goetzmann,* 217 B.R. 9, 16 (Bankr.N.D.N.Y. 1998). Thus, when G & P filed its bankruptcy petition, M2M had qualified as a creditor with an contingent and unmatured claim.

In December 2002, one month after the filing of his Complaint, Slone filed a pleading in the Bankruptcy Court, in which he expressed his objection to the allowance of the claims by those creditors who had received preferential transfers. Appellee's Resp. Br., Ex. A. In this document, he listed M2M as being among other "creditor[s] that received preferential transfers." *Id.* Thus, his statements during the bankruptcy proceedings lend credence to M2M's status as a creditor. Inasmuch as M2M qualifies as a creditor of G & P during the bankruptcy confirmation proceedings, there is an identity of parties for purposes of res judicata which, in turn, satisfies the second element.

■ Similarly, M2M has set forth sufficient evidence with which to meet the third element of this doctrine; namely, that Slone's present claims should have been litigated during the confirmation proceed-

ings. *Bittinger,* 123 F.3d at 880. A bankruptcy court has original jurisdiction to hear "core" proceedings under 28 U.S.C. § 1334(b) and, by virtue thereof, may hear non-core, related claims pursuant to 28 U.S.C § 157(c)(1). Slone's preference and fraudulent conveyances claims represent "core" proceedings, as defined by 28 U.S.C. § 157(b)(2)(F),[4] whereas the balance of his remaining claims constitute "non-core" or related proceedings because they would have affected G & P's rights and liabilities.[5] *Browning,* 283 F.3d at 773 (a claim is "related to" bankruptcy proceeding if it would have affected debtor's rights or liabilities). Thus, the pending claims for conversion, breach of contract, or unjust enrichment in the Amended Complaint of February 23, 2003 are "related to" the bankruptcy proceeding because any recovery by the Debtor on these claims "would have represented an asset, available for distribution to [G & P's] creditors and shareholders." *Id.* at 773. Thus, all of the claims present in Slone's Complaint should have been litigated in the initial Chapter 11 bankruptcy proceeding.

However, Slone maintains that these claims arose after the filing of G & P's bankruptcy petition and, in his opinion, eliminates the applicability of the res judicata doctrine. This Court disagrees. The claims that he has made in this case "arose" *before* the filing of the bankruptcy petition when (1) G & P executed its contract for the construction of the mold insert replacements and (2) M2M took possession of the molds. In light of these facts, G & P should have been aware that the M2M had improperly retained possession of their molds at the time of the

---

4. According to 28 U.S.C. § 157(b)(2), core proceedings include "(F) proceedings to determine, avoid, and recover preferences" and "(H) proceedings to determine, avoid, and recover fraudulent conveyances."

5. Non-core or related proceedings are those that have not been listed as core proceedings under the Bankruptcy Code or listed in 28 U.S.C. § 157(b)(2)(A-O).

bankruptcy petition. Indeed, correspondence between the attorneys for these two contracting parties confirm that G & P was aware that M2M had possession of the "C" tool as early as August 20, 2001. Appellant Br., Ex. D. Based on this evidence, it is the conclusion of this Court that Slone's claims could have and should have been litigated during the confirmation proceedings. Thus, this element of the res judicata analysis has been satisfied.

■ The fourth element (i.e., the identity of causes of action) can be satisfied if "the claims arose out of the same transaction or series of transactions, or [if] the claims arose out of the same core of operative facts." *Browning*, 283 F.3d at 774 (citing In *re Micro–Time Mgmt. Sys., Inc.*, 983 F.2d 1067, 1993 WL 7524, at *5 (6th Cir., Jan. 19, 1993) (unpublished)). Slone's Complaint reads, in relevant part, as follows:

9. The [allegedly preferential] payment received by the Defendant enables the defendant to receive more from the bankruptcy estate then [sic] the Defendant would receive under a chapter 7 bankruptcy proceeding.

10. The [allegedly preferential] payment enables the Defendant to receive more money then [sic] they would if the payment had not been made.

11. The [allegedly preferential] payment enables the Defendant to receive more money then [sic] they would if Defendant received a payment of their antecedent debt in accordance with the provisions of title 11 of the United States Code.

Pl.'s Amend. Compl. ¶¶ 9–11. By comparing the amount that was received by M2M with that which it would have received as the result of a Chapter 11 bankruptcy proceeding, Slone has essentially conceded that his preferential payment claim involves the same basic factual background as that in the Plan's confirmation proceedings. Similarly, his other claims are directly connected to G & P's ability to reorganize, inasmuch as these claims are tied to the liquidation of the Debtor's assets and the distribution of payments to its creditors. *See In re Crowley*, 299 B.R. 830, 846 (Bankr.E.D.Mich.2003); *see also In re Kelley*, 199 B.R. 698, 702 (9th Cir. BAP 1996) (for res judicata purposes, confirmed plan "comprises all matters pertaining to the debtor-creditor relationship that [the debtor] or any creditors might [raise] to advance their interests in the proceeding.") Thus, the fourth element of a res judicata analysis has been satisfied.

In summary, this Court concludes that the four elements of the res judicata doctrine have been satisfied with respect to Slone's claims against M2M.

### IV.

■ Slone also argues that the entry of a summary judgment is inappropriate because G & P has adequately preserved its claims against M2M in the Plan. This Court recognizes that an exception exists to the general rule that a confirmed Chapter 11 plan of reorganization precludes a debtor or related entity from advancing claims that were or should have been brought during the Chapter 11 proceeding. *In re Crowley*, 299 B.R. at 846. According to the Sixth Circuit, "[r]es judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding." *Browning*, 283 F.3d at 774; *see also In re Micro–Time*, 1993 WL 7524, at *4 (res judicata will bar later litigation of claims "not expressly reserved in the plan of reorganization or the order confirming the plan of reorganization").

■ However, it is axiomatic that a general reservation of rights is an insufficient

basis upon which to bar the application of the res judicata doctrine. *Browning,* 283 F.3d at 774. A "blanket reservation by the debtor 'reserving all causes of action which the debtor may choose to institute' has been held insufficient to prevent the application of res judicata to a specific action." *In re Kelley,* 199 B.R. at 704 (citing *In re Micro–Time,* 1993 WL 7524, at *4–5.)

■■■ In this case, Article VIII of the Plan, "Reservation of Rights," reads: "Notwithstanding the confirmation of the Plan, except as stated herein, the Reorganized Debtor shall retain all causes of action which the Debtor and/or the Debtor in Possession may have under the Bankruptcy Code, including, but not limited to, causes of action under Chapter 5 of the Bankruptcy Code." Appellant Br., Ex. A, at 15.

It is clear that this Article VIII constitutes a general reservation of rights. In *Browning,* the Sixth Circuit evaluated a similar reservation of rights, which read:

> In accordance with section 1123(b) of the Bankruptcy Code, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under section 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code.

*Browning,* 283 F.3d at 774–75. The *Browning* court concluded that this reservation of rights represented a "blanket reservation" which did "not defeat the application of res judicata to its claims against [the Defendant]." In making this determination, the Sixth Circuit reasoned that the reservation was "of little value" to the bankruptcy court and the other parties to the bankruptcy proceeding because "it did not enable the value of the [Debtor's] claims to be taken into account in the disposition of the debtor's estate." *Id.* at 775. The court specifically noted that the reservation neither named the creditor nor stated "the factual basis for the reserved claims." *Id.*

Interestingly, the reservation in above-quoted Article VIII is virtually identical to the blanket reservation that was at issue in *Browning.* It is also significant that G & P's Amended Plan fails to (1) name M2M, (2) describe the specific cause of action, or (3) identify the factual basis for any claim against the Defendant, as required by *Browning.* See also *In re Crowley,* 299 B.R. at 849–50; *In re Kelley,* 199 B.R. at 704. In fact, the reservation in this Amended Plan is arguably less specific that its counterpart in *Browning* because the provisions of Chapter Five of the Bankruptcy Code under which it purports to reserve causes of action have not been specified. Based on the similarity of the reservation language in this case to *Browning, In re Crowley* and others, this Court concludes that the language within Article VIII of the "Reservation of Rights" is an insufficient basis upon which to avoid the res judicata effect of the Plan.

However, Slone contends that *Browning* is inapposite because the liquidation analysis, which accompanied the Plan, contemplates a claim against M2M. Thus, it is his view that, under these circumstances, the creditors were able to evaluate and consider these claims in deciding whether to vote to reject or accept the Plan. According to him, the liquidation analysis "clearly states claims the Debtor holds against the Defendant and even contemplates value of distributions to creditors." Appellant's Br. at 12. He also asserts that the liquidation analysis incorporates claims against M2M for conversion, breach of contract, and the preference claim. In support of this contention, Slone attaches his own affidavit,

dated December 16, 2003, which states that in preparation for his liquidation analysis, he made calculations which took the conversion, breach of contract, and preference claims against M2M into consideration. *See* Appellant Br., Ex. B.

A review of the liquidation analysis by this Court does not support Slone's arguments. Notably, there is no mention of M2M in the liquidation analysis. Appellant Br., Ex. B. This analysis only provides general figures. For example, it states that G & P had $425,016 of accounts receivable in its "Trade Issues/ Claims" category, translating into a cash value of $49,571 or 11.7%. *Id.* This analysis also reveals that G & P could obtain an estimated $425,000 or 85% of its "estimated recoveries from preferences." *Id.* But, the analysis fails to provide any level of specificity with regard to the specific claims against M2M. *See In re Crowley,* 299 B.R. at 850 (liquidation analysis did not set forth specific claims against defendant or what those claims might be in event of liquidation). As such, this Court declines to conclude that the creditors and other parties in interest would have been able to deduce from this document that there were causes of action against [the Defendant] which would be "pursued post-confirmation and that would create a measurable value for creditors and other parties in interest." *Id.* at 850. This Court is also unwilling to credit Slone's assertions, as set forth in the affidavit which was prepared by him well after the confirmation of the Plan, that he took the claims against M2M into account in his liquidation analysis. There is no corroborating evidence to support his affidavit in either the liquidation analysis or the Plan. Thus, this Court concludes that the liquidation analysis prepared by Slone does not salvage his present claims from the doctrine of res judicata.

Slone also advances the argument that the *Browning* requirement (i.e., the Plan must contain specific causes of action against identified parties) is onerous. This, according to him, clearly suggests that *Browning* should not control the outcome in this case. In support of this position, he cites the opinion in *In re Crowley,* in which the bankruptcy court noted that "other courts have rejected the specificity requirement of *Browning.*" *In re Crowley,* 299 B.R. at 851 (citing *In re USN Communications, Inc.,* 280 B.R. 573 (Bankr.D.Del.2002); *In re Ampace Corp.,* 279 B.R. 145 (Bankr.D.Del.2002)). While these other courts may have disagreed with *Browning,* their decisions—unlike *Browning*—do not control this appeal. Indeed, although the bankruptcy court in *Crowley* recognized that the *Browning* decision had not been unanimously endorsed by other courts, it also noted that it was "constrained to follow the binding precedent in *Browning....*" *Id.* at 852. Similarly, this Court, in applying the principles of *Browning* to the instant case, finds that G & P's failure to provide an express reservation of rights in the Plan is insufficient to prevent the application of res judicata. In making this determination, this Court concurs with the *Crowley* court which opined that the specific requirement in *Browning* "furthers the policy of complete disclosure, which is the cornerstone of the Bankruptcy Code, and promotes the finality of confirmation orders which thereby increases certainty, discourages multiple litigation, and conserves judicial resources." *Crowley,* 299 B.R. at 852. In light of this policies, Slone's arguments must be rejected.

## V.

In summary, the confirmation of the Plan and the principle of res judicata precludes Slone from asserting the claims in his Complaint. Moreover, the general res-

ervation of rights in the Plan is insufficient to bar the application of res judicata in this case. Accordingly, this Court affirms the entry of a summary judgment in favor of M2M by the Bankruptcy Court.

IT IS SO ORDERED.