In re WESTERN INTEGRATED
NETWORKS, LLC., et al.,[1]
Debtors.

Tom H. Connolly, as liquidation trustee of the Consolidated WIN Liquidating Trust, Plaintiff,

v.

The City of Houston, Texas, Defendant,

City of Houston, Texas,
Counter–Plaintiff,

v.

Tom H. Connolly, as liquidation trustee of the Consolidated WIN Liquidating Trust, Counter–Defendant.

Bankruptcy Case No. 02–13043 EEB.
Adversary No. 04–1330 MER.

United States Bankruptcy Court,
D. Colorado.

June 30, 2005.

1. Debtors were the following entities: Western Integrated Networks, LLC; Cablexpress, Inc.; Western Integrated Networks Holdings, LLC; Western Integrated Networks of Colorado Operating LLC; Western Integrated Networks of California Operating LLC; Western Integrated Networks of Sacramento Purchasing Company, LLC; WIN of Texas GP LLC; Western Integrated Networks of Texas Operating LP; Western Integrated Networks of Los Angeles Operating LLC; Western Integrated Networks of Colorado Purchasing Company, LLC; and Western Integrated Networks of Dallas Purchasing Company LP.

Hayley L. Chandler, J. Brian Fletcher, Douglas W. Jessop, Steven T. Mulligan, Paul D. Rubner, Alice A. White, Denver, CO, Christopher Redding, Dow, Lohnes & Albertson, Washington, DC, Ken Whittall-Scherfee, Sacramento, CA, for Debtors.

## ORDER REGARDING MOTION FOR RECONSIDERATION

MICHAEL E. ROMERO, Bankruptcy Judge.

THIS MATTER comes before the Court on the Liquidating Trustee's Motion Pursuant to FED.R BANKR.P. 9024 and FED. R.CIV.P. 60(b) for Reconsideration and Clarification of Order (the "Reconsideration Motion"), the Response thereto filed by the City of Houston (the "Response"), and the Liquidating Trustee's Reply (the "Reply"). The Court grants the Reconsideration Motion to the extent it seeks clarification of this Court's earlier Order; however, it declines to vacate its previous decision.

## PROCEDURAL BACKGROUND

On March 10, 2004, Tom H. Connolly, as liquidation trustee of the Consolidated WIN Liquidating Trust ("Connolly"), initiated an adversary proceeding against the City of Houston, Texas ("Houston"), by filing his Complaint to Avoid and Recover Preferential and Fraudulent Transfers and to Recover Property of the Estate (the "Complaint"). In the Complaint, Connolly asserted four claims for relief:

- That Houston received $64,500 within the ninety days prior to the petition date, and such amount is recoverable by Connolly as a preferential transfer pursuant to 11 U.S.C. § 547(b) (the "First Claim");
- That the $64,500 received by Houston was a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B) (the "Second Claim");
- That the $64,500 is a fraudulent transfer under § 544 and Tex. Bus. & Com. Code § 24.005 (the "Third Claim"); and
- That a $1 million prepayment should be turned over to Connolly pursuant to 11 U.S.C. § 542 (the "Fourth Claim").

On July 2, 2004, Houston filed its Original Answer to Complaint, Motion to Dismiss and Counter Complaint for Declaratory Relief. In this combined pleading, Houston: (i) answered the Complaint, (ii) sought to dismiss the Complaint pursuant to FED.R.CIV.P. 12(b)(6) ("Houston's Motion to Dismiss"), and (iii) asserted a counter-complaint for declaratory judgment based on three separate legal theories. Shortly thereafter, Connolly filed a motion seeking the dismissal of Houston's counter-complaint.

On January 6, 2005, a hearing was held before the Court to consider the parties' respective motions to dismiss. On March 24, 2005, this Court issued its Order (the "Order"), partially granting Houston's Motion to Dismiss and denying Connolly's Motion to Dismiss. The Reconsideration Motion was subsequently filed by Connolly. Paragraph 67 of the Reconsideration Motion best summarizes Connolly's position, stating:

[Connolly] cannot determine whether the Order should be read as holding that: (i) there was no reservation of jurisdiction in Debtors' confirmed Plan of Reorganization for [Connolly] to bring the Third and Fourth claims and therefore the court lacks subject matter jurisdiction; or (ii) the Court has subject matter jurisdiction under the Bankruptcy Code, but 11 U.S.C. § 542 does not provide [Connolly] with a claim for relief because, by its terms, § 542 is only applicable until confirmation; or (iii) the Court has subject matter jurisdiction under the Bankruptcy Code and § 542 is a proper cause of action, but [Connolly] is the wrong party to bring this action; or (iv) something altogether different.

## DISCUSSION

### I. The Scope of the Court's Order.

The Court's Order addresses only Connolly's rights to bring claims in the Bankruptcy Court under specific provisions of the Bankruptcy Code. Specifically, the Court found Connolly lacked standing to bring claims under §§ 542(a) and 544 of the Bankruptcy Code because such actions were not clearly reserved in the confirmed WIN Chapter 11 plan (the "Confirmed Plan"). Further, the Court held that no jurisdictional grounds exist for Connolly to maintain a post-confirmation action under § 542. The Court makes no determination as to any non-Bankruptcy Code rights which may be held by Connolly as a result of the Confirmed Plan or as to where such claims may be brought.

### II. The Standing Analysis.

#### A. Requirements for Standing.

■ "The issue of standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *In re Martin Paint Stores,* 199 B.R. 258, 263 (Bankr.S.D.N.Y. 1996) (citing *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). Standing is a fundamental component of the court's subject matter jurisdiction and is appropriately raised in a motion to dismiss under 12(b)(1). *Miller v. Pacific Shore,* 224 F.Supp.2d 977, 994 (D.Md. 2002); *Pye v. United States,* 269 F.3d 459, 466 (4th Cir.2001). "The particular inquiry is 'whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.'" *Dixon v. Edwards,* 172 F.Supp.2d 702, 710 (D.Md.2001) (quoting *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

Post-confirmation standing issues such as those in this case have their genesis in the language of § 1123(b)(3), which provides:

(b) Subject to subsection (a) of this section, a plan may—

\* \* \*

(3) provide for—

(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

(B) the retention and enforcement by the debtor, the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest;

■ Courts have identified two separate requirements to establish standing under § 1123(b)(3). The first requirement is that the plan must retain the claims to be asserted post-confirmation. *See In re Mako,* 985 F.2d 1052, 1056 (10th Cir.1993); *Temex Energy, Inc. v. Kirschner (In re Amarex),* 96 B.R. 330, (W.D.Okla.1989). The second requirement is that if the person seeking to enforce the claim is a stranger to the estate, the person must be appointed and be a representative of the estate. *Mako, supra* at 1056; *McFarland*

v. Leyh (In re Texas General Petroleum Corp.), 52 F.3d 1330, 1334–35 (5th Cir. 1995). In this case, only the first requirement is at issue.

## B. The Confirmed Plan's Reservation of Powers Lacks the Specificity Necessary to Confer Standing on the Liquidation Trustee to Bring Actions in the Bankruptcy Court Under §§ 542(a) and 544.

In its Order, the Court's finding that Connolly's Third and Fourth Claims must be dismissed for lack of standing arises from its determination that the "blanket" reservation of rights contained in the Confirmed Plan was inadequate to preserve such claims. (Order, p. 8). Connolly argues the Court misinterprets Tenth Circuit case law in finding the Confirmed Plan's reservation of powers inadequate to provide standing for him to bring these actions. Specifically, Connolly contends the Court inaccurately interprets Tenth Circuit case law as requiring section-specific reservations. After reviewing its previous Order, the Court declines to alter its ruling on this issue.

■ Current legal authority recognizes two general categories of "rights reservations" in Chapter 11 plans. First are "blanket" reservations, containing broad language purporting to grant post-confirmation entities powers to pursue any and all claims which could have been pursued by the debtor-in-possession or an appointed case trustee pre-confirmation. See In re Weidel, 208 B.R. 848, 853 (Bankr. M.D.N.C.1997) (approving plan provisions containing a general reservation of the right to object to claims). Article 8, ¶ C of the Confirmed Plan provides an example of such a "blanket" reservation, stating "title to all of Consolidated WIN's assets and property, including claims, causes of action, and other interests, shall be vested in the Trust. . . ."

Second are more specific reservations, in which a plan identifies the type of actions to be reserved by Bankruptcy Code sections or other clear defining language. See In re Mako, Inc., 985 F.2d 1052, 1055 (10th Cir.1993) and cases cited therein.[2] The Mako case involved a confirmed plan under which a third party, Retail Marketing Company ("RMC"), purchased the assets of the Debtor and assumed its priority and secured debt. The confirmed plan also provided, inter alia, that a litigation trustee was to pursue certain adversary actions on behalf of unsecured creditors. Mako, 985 F.2d at 1054. After the effective date of the plan, RMC brought litigation against several defendants. Id. The Tenth Circuit set forth two requirements which must be present under 11 U.S.C. § 1123(b)(3)(B) when a party who is not a debtor or a case trustee seeks to enforce a claim: (1) the party must show it has been appointed; and (2) the party must show it is a representative of the estate. Id., (citing Citicorp Acceptance Co. v. Robison (In re Sweetwater), 884 F.2d 1323, 1326 (10th Cir.1989); and Temex Energy, Inc. v. Hastie & Kirschner (In re Amarex, Inc.), 96 B.R. 330, 334 (W.D.Okla.1989)).

■ RMC relied on a paragraph of the confirmed plan stating confirmation of the

---

**2.** As noted in the Order, in this second category, some courts have gone so far as to require cause of action-specific reservations, identifying the individual parties that the reorganized debtor or other entity expects to pursue post-confirmation. See, e.g., Browning v. Levy, 283 F.3d 761, 774–75 (6th Cir.2002); In re G–P Plastics, Inc., 320 B.R. 861 (E.D.Mich.2005);

Michaels v. World Color Press, Inc. (In re LGI, Inc.) 322 B.R. 95 (Bankr.D.N.J.); but see, In re Pen Holdings, Inc., 316 B.R. 495, 504 (Bankr.M.D.Tenn.2004) (questioning the application of Browning and holding adequate for standing a plan which defined avoidance actions to include preferential transfers, even without identification of specific defendants).

plan would result in RMC's assumption of all the debtor's rights in pending litigation, together with the right to "prosecute all objections to claims which may exist on the effective date, or any others to which RMC may object in accordance with the plan, and may appear as the real party in interest in any pending or later instituted contested matter or adversary proceeding filed herein." *Mako*, 985 F.2d at 1055. The Court ruled the language of the plan was too vague to allow RMC to bring new actions, stating:

> Here the provision of the plan purporting to confer authority on RMC to initiate avoidance actions after confirmation of the plan is vague ... *We hold that there must be clear evidence of the reservation of the avoidance powers RMC seeks to assert for it to have been appointed under the plan to exercise such powers.* Because this evidence is lack-

ing, RMC is not empowered to bring this litigation.

*Id.*, (emphasis added) (citing with approval *Retail Marketing Co. v. Northwest Nat'l Bank (In re Mako, Inc.)*, 120 B.R. 203, 209 (Bankr.E.D.Okla.1990) wherein the Bankruptcy Court for the Eastern District of Oklahoma found because plan confirmation dissolves the bankruptcy estate, "the retention provision of § 1123(b)(3)(B) requires specific and unequivocal language of reservation. Without this language, the avoidance powers of the Trustee ... perish and become unenforceable.").[3] Because the reservation of rights under which Connolly seeks to bring his §§ 542(a) and 544 claims is based on the same type of vague, "blanket" language disapproved by the *Mako* Court, this Court found Connolly did not possess standing to pursue such claims, because the Confirmed Plan failed clearly to reserve rights to such actions.[4]

---

3. *See also, Harstad v. First American Bank,* 39 F.3d 898, 902–903 (8th Cir.1994) (citing *Mako* for the proposition that language purporting to retain rights to bring post-confirmation claims must be "specific and unequivocal" and holding 11 U.S.C. § 1103(b)(3) requires notice to creditors of potential post-confirmation actions); *In re BankVest Capital Corporation,* 2003 WL 1700978, *5 (D.Mass.2003) (agreeing with the holding in *Harstad* and finding language in the plan which specifically identified the type of action and the Code section authorizing it sufficient to retain standing to bring such claims).

4. Connolly asserts *Mako* is factually distinguishable in part because the key issue decided by that Court was whether RMC, not the litigation trustee appointed under the confirmed plan, was able to bring the actions. The Court disagrees the holding in that case can be so limited. In *Mako,* the Tenth Circuit adopted a presumption against reservation of avoidance and other like powers by all non-debtor, non-case trustee parties without clear evidence that such powers were reserved. *In re Mako, Inc.,* 985 F.2d at 1056. While the issue presented in this case was not the focal

part of the *Mako* decision, the breadth of the Tenth Circuit Court's analysis is clearly applicable herein.

Additionally, in his Reply, Connolly argues that the *Mako* Court's citation to the case of *Xonics, Inc. v. E & F King & Co. (In re Xonics, Inc.),* 63 B.R. 785 (Bankr.N.D.Ill.1986), supports his position because the *Xonics* plan language resembled that of the Confirmed Plan. *Reply,* p. 5. This argument is flawed. In the *Xonics* case, the plan provided for the debtors to retain all causes of action and claims against third parties; however, the plan specifically included retention language for any actions to avoid and recover preferences under §§ 547 and 550. *Id.* at 786. The issues in that case related to the rights of third parties to assert preference actions post-petition. Since the challenges in that case were to the actions brought by third parties under § 547, the specificity language of present concern was not addressed. Therefore, to the extent that the *Mako* Court cited *Xonics,* this Court believes it was for the purpose of illustrating another case in which specific statutory sections were cited for standing purposes.

The Court's determination is further supported by the recently published case, *In re Ice Cream Liquidation, Inc. v. Calip Dairies, Inc. (In re Ice Cream Liquidation, Inc.),* 319 B.R. 324 (Bankr.D.Conn. 2005). In *Ice Cream Liquidation,* the Court points out a debtor's possession of all the powers of a trustee normally ceases upon plan confirmation, but notes Second Circuit case law allows a non-trustee to bring an action under Chapter 5 of the Bankruptcy Code pursuant to an appropriate order of the Bankruptcy Court. *Id.* at 333 (citing *Petrowax, P.A., Inc. v. C & C Petroleum & Chemicals Group, Inc. (In re Petrowax P.A., Inc.),* 200 B.R. 538, 540 (Bankr.D.Del.1996) and *Glinka v. Murad (In re Housecraft Industries USA, Inc.),* 310 F.3d 64, 71 n. 7 (2nd Cir.2002)). The Court explains that 11 U.S.C. § 1123(b)(3)(B) allows a plan to provide for retention and enforcement by the debtor of any claim or interest belonging to the debtor or the estate, but cautions the plan must contain adequate retention provisions. *Ice Cream Liquidation,* 319 B.R. at 333. In the case before the *Ice Cream Liquidation* Court, the plan specifically mentioned 11 U.S.C. §§ 544, 547, 548, and 550, but failed to make any reference to 11 U.S.C. § 542 turnover actions, actions to recover accounts receivable, or the invalidation of set-offs. *Id.* The Court found the plan's broad "blanket" language created an ambiguity in the plan, which ambiguity, as in all contracts, would be construed against the drafter. *Id.* The plan's language giving the debtor power to compromise or settle "Chapter 5 litigation" was too vague

to confer standing because "Chapter 5 litigation" was not a defined term in the plan and did not clarify whether it included § 542 claims. *Id.* n. 14.

For these reasons, the Court believes its earlier analysis was correct and declines to alter its conclusion that the Confirmed Plan in the underlying bankruptcy case did not reserve Connolly's right to bring any actions under §§ 542 and 544.

## III. The Trustee May Not Bring a Section 542(a) Claim.

### A. Section 542(a) Claims Do Not Survive Confirmation.

While the standing issue in and of itself may be determinative on the issue, it is also critical to note Connolly's Fourth Claim, based upon § 542, further fails the "retention requirement," as such a claim cannot survive post-confirmation.

Connolly maintains that Article 16 of the Confirmed Plan gives the Court jurisdiction to adjudicate § 542 claims.[5] As Connolly recognizes, the bankruptcy court is a court of limited jurisdiction. (*Reconsideration Motion,* p. 6, citing *Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1517 (10th Cir.1990)). As such, a bankruptcy court cannot exercise jurisdiction over a proceeding when the proceeding falls outside the jurisdictional boundaries established by statute. *In re Poplar Run Five Limited Partnership,* 192 B.R. 848, 859 (Bankr.E.D.Va.1995).

Section 542(a) provides:

---

**5.** Article 16 of the Confirmed Plan states in pertinent part:

After the Effective Date, the Court shall retain jurisdiction over the Consolidated WIN case for the following purposes:

... D. Title to Assets. To hear and determine any and all questions and disputes regarding title to the assets to be adminis-

tered pursuant to the Plan and the determination of all causes of action, controversies, adversary proceedings and contested matters, whether or not pending as of the Confirmation Date, including but not limited to, the right of the estate to recover assets or subordinate claims pursuant to the provisions of the Bankruptcy Code.

"[A]n entity, other than a custodian, in possession, custody or control *during the case,* of property *that the trustee may use, sell or lease under § 363 of this title* ... shall deliver to the trustee, and account for, such property or the value of such property ... "

(emphasis added). Connolly argues § 542(a)'s "during the case" language allows § 542 actions until a bankruptcy case is closed pursuant to 11 U.S.C. § 350. However, this argument ignores the fact that the closing of a case, while it requires a factual determination by the Court that certain criteria have been met, remains primarily an administrative action. *In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.,* 238 B.R. 531, 542 (Bankr. E.D.N.Y.1999). The more significant event is plan confirmation, which "radically changes the relationship between an estate and parties in interest." 7 Collier on Bankruptcy ¶ 1129.01[1] (15th Ed.2004). A confirmed plan functions as a contract between a plan proponent and holders of claims. *Miller v. United States,* 363 F.3d 999, 1004 (9th Cir.2004). After confirmation, it is the confirmed plan, not the Bankruptcy Code, which controls the relationship between the now reorganized debtor and its creditors. *In re Montgomery Ward Holding Corp.,* 306 B.R. 489, 494 (Bankr.D.Del.2004).

■ Equally important, upon confirmation and consummation of a plan the bankruptcy court's jurisdiction ceases and the property of the estate revests in the reorganized debtor. *See In re Lacy,* 183 B.R.

890, 894 (Bankr.D.Colo.1995). At that point, the property's relationship to the estate, and therefore the bankruptcy court's jurisdiction over the property, ends. *Id.*[6] Accordingly, the Court finds the confirmation of the plan, not the closing of the case, to be the operative event for § 542 "during the case" analysis.

The *Shearin* case, cited by Connolly for the opposite proposition, is distinguishable. *Shearin* did not address a debtor's or a trustee's post-confirmation powers, but rather whether the words "during the case" in 11 U.S.C. § 542(a) required turnover of property held during the pendency of an adversary proceeding, or of property held during the pendency of the underlying case. *In re Shearin,* 224 F.3d 353, 356 (4th Cir.2000). The Court stated: "We construe the language 'during the case' to refer to the entire bankruptcy case, not just the adversary proceeding." *Id.* Thus, while the broad-brushed language used by the *Shearin* Court may by useful to Connolly's position, the actual holding of the case gives him no support.

Likewise, Connolly cites to the case of *In re Network Staffing Services, Inc. Liquidating Trust v. Jenkens & Gilchrist, et al. (In re Network Staffing Services, Inc.),* 43 B.C.D. 237, 2004 WL 3007082 (Bankr. N.D.Tex.2004), as supporting a post-confirmation § 542 action. Such reliance is misplaced. The Court in *Network Staffing* dealt with a claim for professional malpractice which was assigned to a liquidat-

---

**6.** This Court is not alone in reaching this conclusion. Based upon this premise, several courts have specifically noted that § 542(a) claims do not survive confirmation because post-confirmation actions would not occur "during the case" under the language of the subsection. *See, e.g., In re Diagnostic Intern., Inc.,* 257 B.R. 511, 515 (Bankr.D.Ariz.2000) ("Once the plan is confirmed, there is no trustee or estate left to which the property may be returned. Therefore, while the Reorganized Debtor stated a claim for turnover, the true nature of the claims in the complaint are state law claims and not claims arising under title 11.") (citing *Celotex Corp. v. Edwards,* 514 U.S. 300, 308–09 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403, *In re Menk,* 241 B.R. 896, 908 (9th Cir. BAP 1999); *In re Casamont Investors, Ltd.,* 196 B.R. 517 (9th Cir. BAP 1996), and *In re Poplar Run,* 192 B.R. at 858).

ing trustee created by a confirmed plan in a situation similar to that existing in this case. *Id.* at *11. The liquidating trustee in that case brought a claim styled as a "turnover" claim under § 542. When addressing the issue, the Court did not deal with the question of whether such a claim could even exist post-confirmation; rather, the Court noted that such a claim failed as it could not provide the trustee's desired relief. *Id.* at *4–5.

Further, as this Court explained in its Order, in addition to the limits created by the use of "during the case" language, the clear language of § 542 limits turnover actions to property a trustee "may use, sell, or lease under § 363." A paucity of case law exists as to the interaction between § 542 and § 363, but at least one court has held § 363 has no applicability to a Chapter 11 case post-confirmation. *In re Golf, LLC*, 322 B.R. 874, 877 (Bankr. D.Neb.2004) (Section 363 only applies during the pendency of the Chapter 11 case and before confirmation). If § 363 has no applicability post-confirmation, then § 542, which includes § 363 as a prerequisite to its operation, must likewise not apply post-confirmation.

### B. Connolly's § 542 Claim Must Fail as a Prerequisite to its Assertion Has Not Been Met.

■■■ Finally, several courts have recognized an additional prerequisite to the exercise of turnover power under § 542. This prerequisite is best stated by the Eleventh Circuit Court of Appeals in the case of *Charter Crude Oil Co. v. Exxon Co. U.S.A. (In re Charter Co.)*, 913 F.2d 1575, 1579 (11th Cir.1990):

> Turnover proceedings are not to be used to liquidate disputed contract claims. *In re Chick Smith Ford, Inc.*, 46 B.R. 515, 518 (Bankr.M.D.Fla.1985). Clearly, Congress envisioned the turnover provi-

sion of § 542 of the Code, 11 U.S.C. § 542 (1988), to apply to tangible property and money due to the debtor without dispute which are fully matured and payable on demand. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 202–03, 103 S.Ct. 2309, 2312–13, 76 L.Ed.2d 515 (1983); *In re Chick Smith Ford*, 46 B.R. at 518. Congress intended to ease reorganization by allowing the debtor to obtain funds immediately necessary for survival-not all funds, only those not in dispute. *In re Chick Smith Ford*, 46 B.R. at 518; *see, e.g., In re Archer*, 34 B.R. 28 (Bankr.N.D.Tex. 1983) (fully liquidated and undisputed bank deposits to be offset against outstanding loan); *see also, In re Welch*, 29 B.R. 819 (Bankr.M.D.Tenn.1982).

*In re Charter Co., supra* at 1579.

■■■ Thus, *Charter* and similar cases support the proposition that § 542 is inapplicable until there is a resolution of any dispute relating to whether the challenged item is "property of the estate." *See, e.g., Trefny v. Bear Stearns Secs. Corp.*, 243 B.R. 300, 320 (S.D.Tex.1999); *Venn v. Kinjite Motors Inc.*, 163 B.R. 887, 889 (Bankr.N.D.Fla.1994). From the pleadings filed in this case, it is evident that there exists a substantial dispute on the nature of the monies in dispute. Connolly's Complaint and subsequent pleadings assert the funds in question belong to the reorganized Debtors, and so may be recovered by him for distribution to creditors. Houston, on the other hand, claims the funds are subject to recoupment against capital contributions owed to Houston, or, alternatively, do not belong to the Debtors because any interest in the underlying Franchise Agreement was sold to a third party, Sure–West Communications. Therefore, because of the disputed nature of the funds, a § 542 action could not exist even if it survived confirmation.

## CONCLUSION

For the above reasons, this Court declines to alter its earlier Order granting Houston's Motion to Dismiss. Accordingly,

IT IS ORDERED that Connolly's Reconsideration Motion is DENIED.