In re REGIONAL DIAGNOSTICS, LLC., et al., Debtors.

Robert A. Morris, Creditors' Trustee of DKRC, LLC, f/k/a Regional Diagnostics, LLC, et al., Plaintiff,

v.

James V. Zelch, et al., Defendants.

Bankruptcy No. 05–15262.

Adversary Proceeding No. 06–1957.

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

June 1, 2007.

**6**

Frank R. DeSantis, Thompson Hine LLP, Thomas P. Marotta, Andrew L. Turscak, Jr., Cleveland, OH, John D. Eaton, Paul Steven Singerman, Berger Singerman, P.A., Ft. Lauderdale, FL, Barbra Rachel Parlin, New York, NY, for Defendants.

Michael S. Fox, Fredrick J. Levy, Olshan Grundman Frome Rosenzweig & Wolosky, New York, NY, for Plaintiff.

### *MEMORANDUM OF OPINION*

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

In this action, the chapter 11 creditors' trustee seeks to recover funds from multiple defendants following confirmation of the debtors' plan of reorganization.[1] Two sets of defendants bring separate motions to dismiss.[2] For the reasons stated below, both motions are denied, and the plaintiff is ordered to amend count I of the complaint to comply with federal rule of civil procedure 9 (made applicable by federal rule of bankruptcy procedure 7009).

---

**1.** Case No. 06–1957, Docket 1.

**2.** Case No. 06–1957, Docket 31, 32, 33, 36.

## JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered by the United States District Court for the Northern District of Ohio. At this point in the proceedings, it is unnecessary to distinguish between core and non-core claims. *See Thickstun Bros. Equip. Co., Inc. v. Encompass Servs. Corp. (In re Thickstun Bros. Equip. Co., Inc.)*, 344 B.R. 515, 520 (6th Cir. BAP 2006) (noting that it is only necessary to determine whether the matter is "related to" the bankruptcy to decide whether the matter is within the bankruptcy court's jurisdiction). The court finds that counts I, II, IV, V, VI, and VII are at least related to the bankruptcy, as the successful or unsuccessful adjudication of those claims (either before or after confirmation) could have altered the debtors' rights, liabilities, or options, and thereby impacted the handling and administration of the bankrupt estate. *See Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 489 (6th Cir.1996). Of the seven counts in the complaint, the parties only dispute the court's jurisdiction over count III. As discussed below in connection with the motion to dismiss brought by Mark A. Abbott, Barry J. Uphoff, and Robert W. Koehn, the court finds that it has jurisdiction over that claim.

## FACTS

### Procedural History

Regional Diagnostics L.L.C. (RDI), Regional Diagnostics Holdings, L.L.C. (RDH), and TR Radiology, Inc. (TRR) (collectively, the debtors) filed voluntary chapter 11 petitions on April 20, 2005.[3] On February 8, 2006, the court approved the debtors' Second Amended Disclosure Statement (the disclosure statement).[4] Then, on April 7, 2006, the court entered an order (the confirmation order)[5] confirming The Second Amended Joint Plan of Liquidation (the plan).[6] Pursuant to the confirmation order, plaintiff Robert A. Morris was appointed as creditors' trustee.

Following confirmation, the plaintiff filed a complaint against James V. Zelch, M.D., Mark Zelch, Nancy Lynn Westrich, M.D., Regional Health Services, Inc. (RHS), JVZ Partners Limited (JVZ), and JZ Investment Corp. (JZ) (collectively, the Zelch Defendants), and Mark A. Abbott, Barry J. Uphoff, and Robert W. Koehn (collectively, the Trivest Manager Defendants).[7] The complaint states these seven causes of action:

(1) Fraudulent Transfers Based Upon Actual Fraud (Count I) against all of the Zelch Defendants;

(2) Fraudulent Transfers Based Upon Constructive Fraud (Count II) against all of the Zelch Defendants;

(3) Breach of Fiduciary Duty (Count III) against Dr. Zelch, Mark Zelch, and the Trivest Manager Defendants;

(4) Unjust Enrichment (Count IV) against all of the Zelch Defendants;

(5) Conversion (Count V) against Dr. Zelch and Mark Zelch;

---

3. *In re Regional Diagnostics, L.L.C.* (Case No. 05–15262), *In re Regional Diagnostics Holdings, L.L.C.* (Case No. 05–15264), and *In re TR Radiology, Inc.* (Case No. 05–15267) were administratively consolidated and jointly administered under Case No. 05–15262. (Case No. 05–15262, Docket 42).

4. Case No. 05–15262, Docket 446, 453.

5. Case No. 05–15262, Docket 480.

6. Case No. 05–15262, Docket 445.

7. Case No. 06–1957, Docket 1.

(6) Equitable Subordination of Seller Entities' Claims (Count VI) against RHS, JVZ, and JZ; and

(7) Objection to Claim of Seller Entities Pursuant to 11 U.S.C. § 502 (Count VII) against RHS, JVZ, and JZ.[8]

In response, the Zelch Defendants and the Trivest Manager Defendants filed separate motions to dismiss. The Zelch Defendants request dismissal under federal rules of civil procedure 9, 12, and 19 (made applicable by federal rules of bankruptcy procedure 7009, 7012, and 7019) and the principle of res judicata.[9] The Trivest Manager Defendants move to dismiss under federal rules of civil procedure 12(b)(1) and (6) (made applicable by federal rule of bankruptcy procedure 7012(b)).[10] The parties filed briefs in support of and in opposition to these motions.[11]

### Factual Allegations in the Complaint

The factual allegations that underlie the complaint center around a leveraged buyout (LBO) of Dr. Zelch's company, RDI.[12] Dr. Zelch founded RDI, a medical services company that performed MRIs, CT scans, ultrasounds, X-rays, and other services.[13] Dr. Zelch and his family owned RDI until March of 2003, when they sold a 60% interest in the company to Trivest Partners, L.P. for approximately $52.5 million ($42.5 million in cash and $10 million in the form of a seller's note).[14] To finance this purchase, RDI obtained approximately $26 million in senior secured loans from Merrill Lynch and Royal Bank of Canada.[15] RDI obtained an additional $13.5 million in senior subordinated loans from Gleacher Mezzanine and Banc Boston Investments, Inc.[16] These additional loans took the form of so-called "mezzanine financing," a hybrid of debt and equity financing.[17]

The plaintiff alleges that this arrangement amounted to wrongdoing on the part of the defendants because, at the time of the sale, RDI was grossly overvalued.[18] According to the plaintiff, the large shareholder payments were justified by an initial value of RDI at approximately $73.2 million.[19] The parties to the sale negotiated a price based on a complex formula using RDI's 2002 earnings before interest, tax, depreciation and amortization (EBITDA) as a significant variable.[20] Because of the EBITDA's importance, the parties to the sale retained the accounting firm of Crowe Chizek and Company LLC to calculate RDI's EBITDA for 2002.[21] The plaintiff alleges that Dr. Zelch and Mark Zelch impeded the ability of Crowe Chizek and RDI's interim CFO, Michael Brodeur, to perform this audit in order to maintain an inflated price for the company.[22] Where the sellers initially estimated the EBITDA

8. Case No. 06–1957, Docket 1.

9. Case No. 06–1957, Docket 33. The Zelch Defendants filed a modified memorandum in support of their motion to dismiss. (Docket 35, 36).

10. Case No. 06–1957, Docket 31.

11. Case No. 06–1957, Docket 32, 36, 44, 45, 46, 47.

12. Case No. 06–1957, Docket 1, ¶ 3.

13. Case No. 06–1957, Docket 1, ¶ 2.

14. Case No. 06–1957, Docket 1, ¶¶ 2, 3.

15. Case No. 06–1957, Docket 1, ¶ 50.

16. Case No. 06–1957, Docket 1, ¶ 55.

17. Case No. 06–1957, Docket 1, ¶ 54.

18. Case No. 06–1957, Docket 1, ¶ 4.

19. Case No. 06–1957, Docket 1, ¶ 4.

20. Case No. 06–1957, Docket 1, ¶ 45.

21. Case No. 06–1957, Docket 1, ¶¶ 46, 57.

22. Case No. 06–1957, Docket 1, ¶¶ 58, 99.

at about $12.5 million, Crowe Chizek calculated that amount as $10.9 million.[23] However, according to the complaint, Crowe Chizek now acknowledges that RDI's 2002 EBITDA was significantly less than $10.9 million, with one estimate placing this value as low as $8.6 million.[24]

The problems with the LBO continued. At the time of the sale, RDI was in a precarious financial condition, a fact allegedly known by all or some of the defendants.[25] According to the complaint, all or some of the defendants pushed the LBO through despite this knowledge.[26] Additionally, all or some of the defendants allegedly engaged in intentional fraud and breaches of fiduciary duty, including maintaining abysmal accounting and financial operations,[27] using obsolete and aged equipment,[28] withholding information from buyers that could affect the future of the business,[29] failing to comply with regulatory standards,[30] installing "incompetent" friends and family members in key RDI positions to maintain control of the company following the LBO,[31] diverting expenses to fraudulently inflate RDI's EBITDA,[32] acting to undermine and compete with RDI's business,[33] and failing to establish management services operation agreements with other Zelch-controlled entities, effectively allowing all or some of the

Zelch Defendants to divert RDI funds to non-RDI operations.[34]

In the end, the allegations continue, because of the dire financial state of RDI and the acts of the defendants, the company was so highly leveraged that it defaulted on its loan payments mere months after the parties completed the LBO.[35] In other words, the debtors' bankruptcy was an inevitable result of the defendants' wrongdoing. Accordingly, the plaintiff brought this action: (1) "to recover for gross breaches of fiduciary duties" both before and after the LBO, (2) "to recover the cash payments received by the Zelch family under the theories of conversion and unjust enrichment," and (3) to object to, and seek equitable subordination of, claims of the defendants against the debtors' estates.[36]

## DISCUSSION

### I. *The Zelch Defendants' Motion to Dismiss*

The Zelch Defendants argue that counts I through VI must be dismissed because they are barred by res judicata.[37] Additionally, they argue count I, Fraudulent Transfers Based Upon Actual Fraud, should be dismissed because the plaintiff failed to plead fraud with particularity as required by rule 9(b).[38] Further, they argue that the complaint fails to name a

23. Case No. 06–1957, Docket 1, ¶¶ 59, 99.

24. Case No. 06–1957, Docket 1, ¶¶ 59, 99.

25. Case No. 06–1957, Docket 1, ¶ 60.

26. Case No. 06–1957, Docket 1, ¶¶ 10, 61, 63–67, 99.

27. Case No. 06–1957, Docket 1, ¶¶ 65–67.

28. Case No. 06–1957, Docket 1, ¶¶ 68–70.

29. Case No. 06–1957, Docket 1, ¶¶ 71–75, 80–83.

30. Case No. 06–1957, Docket 1, ¶¶ 76–79.

31. Case No. 06–1957, Docket 1, ¶¶ 94–99.

32. Case No. 06–1957, Docket 1, ¶¶ 102–04.

33. Case No. 06–1957, Docket 1, ¶¶ 105–09.

34. Case No. 06–1957, Docket 1, ¶¶ 84–93.

35. Case No. 06–1957, Docket 1, ¶¶ 6, 11, 62.

36. Case No. 06–1957, Docket 1, ¶ 12.

37. Case No. 06–1957, Docket 36, at 2.

38. Case No. 06–1957, Docket 36, at 2.

number of necessary parties in violation of rule 19, and that the allegations contained in count III, Breach of Fiduciary Duty, require at a minimum a more definite statement under rule 12(e).[39] For the reasons stated below, the Zelch Defendants' motion to dismiss is denied; however, the plaintiff is to amend count I to conform to the requirements of rule 9.

## A. Dismissal Based on Res Judicata

 The Zelch Defendants argue that the principle of res judicata applies to counts I through VI.[40] Those counts, along with count VII, which is premised upon the allegations in counts I through VI, must be dismissed, the Zelch Defendants continue, because the plaintiff is barred from bringing claims that should have been addressed before the plan was confirmed. The plaintiff does not dispute the well-recognized principle that chapter 11 plans have res judicata effect with respect to claims that became assets of the chapter 11 estate. *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir.1992). Nor does the plaintiff dispute the Zelch Defendants' analysis that res judicata applies to the claims. Instead, the plaintiff contends that counts I through VI are not barred by res judicata because they were preserved in the bankruptcy proceeding under 11 U.S.C. § 1123(b)(3).[41]

### 1. The Reservation of Litigation Rights

The confirmation order, plan, and disclosure statement all address the reservation of claims. The confirmation order states that "[i]n accordance with section 1123(b)(3) of the Bankruptcy Code, the Plan provides for the Creditors Trust to retain and enforce any and all Claims, Litigation Rights, Existing Lender Litigation Claims, causes of action and rights of the Debtors or their chapter 11 Estates as of the Effective Date." [42]

The plan includes this language reserving claims:

> Except as otherwise provided in the Plan or the Confirmation Order, or in any contract, instrument, release, indenture, or other agreement entered into pursuant to the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, on the Effective Date, the Creditors Trust shall retain all Litigation Rights against any Person.[43]

Under the heading "Other Material Matters To Be Addressed During the Chapter 11 Case" the disclosure statement includes a subsection discussing "Claims to Recover Preferential and Fraudulent Transfers." [44] This subsection states:

> Neither the Debtors nor the Committee have evaluated the defenses to potential claims to avoid and recover preferences and fraudulent conveyances in these

---

39. Case No. 06–1957, Docket 36, at 2.

40. Case No. 06–1957, Docket 36.

41. The elements necessary to apply res judicata in the Sixth Circuit are:
 (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir.1997) (emphasis removed). As the plaintiff does not dispute that res judicata applies, the court need not conduct that analysis here. (Case No. 06–1957, Docket 44).

42. Case No. 05–15262, Docket 480, at 7.

43. Case No. 05–15262, Docket 445, § 6.1(f).

44. Case No. 05–15262, Docket 446, at 12–13.

Chapter 11 cases.... In addition, there may be grounds for preference and/or fraudulent transfer claims against insiders, the Existing Lenders and/or the financial buyers, including without limitation in respect of the Debtors' 2003 restructuring described in Article I, Section D herein.[45]

Then, under article III of the disclosure statement summarizing the plan, section J lists "Claims Against Directors and Officers." [46] This section states:

> The Committee has delivered to Debtors a letter that serves as a written demand or notice under the Debtors' applicable insurance policy or policies of claims against the Debtors' directors and officers. A copy of the notice is attached hereto as Appendix D. The Term Sheet provides that any such claims are preserved for the benefit of Debtors' unsecured creditors.[47]

Appendix D, entitled "Notice of Director and Officer Claims," referenced in the disclosure statement, contains the Committee's Officer and Director Claim Letter (claim letter). The claim letter states in pertinent part:

> On behalf of the Official Committee of Unsecured Creditors' (the "Committee") ..., this letter serves as a written demand or notice ... of the claims against the current and former directors and officers of Debtors.
>
> The claims are for (i) breaches of the fiduciary duties of loyalty, care, good faith and disclosure, (ii) self dealing and (iii) waste and spoliation of corporate

assets ... including, but not limited to, the following acts or omissions:

> · Failure to exercise prudent and informed business decisions with requisite care;
> · Failure to properly analyze and value businesses which the Debtors' [sic] acquired;
> · Failure to disclose significant accounting irregularities, revenue overstatements and internal control weaknesses;
> · Failure to report and remediate known violations of state and federal healthcare laws;
> · Diversion of corporate opportunities and assets by directors in competing businesses;
> · Conflicts between officers' and directors' duty to creditors and self interest, including without limitation multiple transactions between the Debtors' [sic] and interested officers and directors; and
> · Exorbitant salaries, consulting fees and/or bonuses paid to insiders or related parties.
>
> As a direct and proximate result of these and other actions by or on behalf of the Debtors, as well as, the non-disclosure or mis-disclosure of such actions, the creditors of the Debtors have been damaged.
>
> · · ·
>
> The Committee hereby asserts claims for damages, in an unliquidated amount, equal to not less than $20 million, with

---

**45.** Case No. 05–15262, Docket 446, at 13. Article I, Section D states: "RDI was a family-owned company until May 2003, when the founder (James V. Zelch, M.D.), and certain other founder affiliated parties, including without limitation the RHS Parties, sold 60% of the equity of the company to financial buyers for $45 million in cash and the $10

million Seller Notes." (Docket 446, at 8). As the Zelch Defendants note, the term "insiders" is not defined. (Case No. 06–1957, Docket 36, at 11 n. 16).

**46.** Case No. 05–15262, Docket 446, at 24.

**47.** Case No. 05–15262, Docket 446, at 24.

respect to the above reference [sic] actions and omissions.[48]

Finally, schedule A attached to the claim letter listed the names of the present and former board members, directors and managers of RDI, including Mark Abbott, James R. Malone, Barry Uphoff, Peter Vandenberg, Jr., David Gershman, James V. Zelch, and Mark Zelch, as well as the present and former officers of RDI, including James V. Zelch, Mark Zelch, James R. Malone, Joseph Whang, Chris Bolton, Marilyn Kuffner, Nancy Westrich, and Keith Marchand.[49]

## 2. Reference to the Disclosure Statement

As a threshold matter, the Zelch Defendants argue that the disclosure statement cannot be considered in determining whether claims asserted in the complaint were reserved in the bankruptcy proceeding. They argue that the plan and the disclosure statement are inconsistent, and that the language in the plan should trump the language in the disclosure statement. In contrast, the plaintiff maintains that the plan and the disclosure statement should be read in conjunction with each other.

■■■■ Both the disclosure statement and the plan should be considered based on general contract principles. It is a general rule that "[i]n interpreting a confirmed plan, courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors." *Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 676 (6th Cir.2006), *cert. denied*, —— U.S. ——, 127 S.Ct. 1874, 167 L.Ed.2d 385 (2007). State law governs those interpretations, and it is a longstanding rule in Ohio as elsewhere that

"writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.*, 78 Ohio St.3d 353, 678 N.E.2d 519, 526 (1997); *see also Bailey v. R.R. Co.*, 84 U.S. (17 Wall.) 96, 108, 21 L.Ed. 611 (1872) ("[I]t is well-settled law that several writings executed between the same parties substantially at the same time and relating to the same subject-matter may be read together as forming parts of one transaction...."); *Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 1:00 CV 8688, 2004 WL 1119652, *3, 2004 U.S. Dist. LEXIS 9153, *14–16 (S.D.N.Y.2004) (using contract principles to justify using the disclosure statement to reserve claims). This supports considering both the disclosure statement and the plan because they were part of a single transaction; i.e., the confirmation process.

Additionally, courts in this circuit have relied on statements made in the disclosure statement when considering whether the plan reserved a cause of action. *See, e.g., Browning v. Levy*, 283 F.3d 761, 774 (6th Cir.2002) (comparing the reservation of rights found in the debtor's disclosure statement with the blanket reservation of rights deemed insufficient in *In re Micro-Time Management Systems, Inc.*, Nos. 91–2260, 91–2261, 983 F.2d 1067, 1993 WL 7524, at *5 (6th Cir. Jan.12, 1993) (unpublished table decision)); *Phoenix Rest. Group, Inc. v. Lawson Software, Inc. (In re Phoenix Rest. Group, Inc.)*, 316 B.R. 681, 683 (Bankr.M.D.Tenn.2004) ("This action is not precluded by confirmation because the Confirmed Plan *and* Disclosure Statement adequately preserved prefer-

---

48. Case No. 05–15262, Docket 468, attachment 9.

49. Case No. 05–15262, Docket 468, attachment 9.

ence actions." (emphasis added)). Further, reviewing disclosure statements along with the plan of reorganization is a common practice in other circuits as well. *See, e.g., Kelley v. S. Bay Bank (In re Kelley)*, 199 B.R. 698, 704 (9th Cir. BAP 1996) ("[I]f the debtor fails to mention the cause of action in either his schedules, disclosure statements, *or* plan, then he will be precluded from asserting it postconfirmation.") (emphasis added); *SouthTrust Bank, N.A. v. WCI Outdoor Prods, Inc. (In re Huntsville Small Engines, Inc.)*, 228 B.R. 9, 13 (Bankr.N.D.Ala.1998). *But see Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 300 B.R. 564, 568–69 (S.D.N.Y.2003) (agreeing with *In re Kelley* on the use of disclosure statements, but rejecting the *Browning* specificity doctrine), *aff'd*, 104 Fed. Appx. 199, 2004 WL 1496858 (2d Cir.2004); *Peltz v. Worldnet Corp. (In re USN Commc'ns, Inc.)*, 280 B.R. 573, 588–94 (Bankr.D.Del.2002) (stating that "most courts hold that where a disclosure statement and/or plan of reorganization expressly reserves an action for later adjudication, *res judicata* does not apply," but rejecting arguments supporting the 'specificity requirement). There is ample well-reasoned authority to justify reading the disclosure statement in congruence with the plan.

■ In arguing for a contrary result, the Zelch Defendants cite *Official Committee of Unsecured Creditors of Crowley, Milner & Co. v. Callahan (In re Crowley, Milner & Co.)*, 299 B.R. 830 (Bankr. E.D.Mich.2003).[50] The court in *In re Crowley, Milner & Co.* found that where the plan and disclosure statement were inconsistent, the language in the plan trumped that in the disclosure statement. *See id.* at 848–49. While the reasoning of

the *Crowley* court is persuasive, it does not apply here because the plan and the disclosure statement are not inconsistent. The plan and the disclosure statement use different language regarding the reservation of rights, but they do not contain conflicting information. The plan reserves rights including "all Litigation Rights against any Person,"[51] and the disclosure statement refines that general reservation by providing information about the claims to be reserved.[52] In other words, the specific language in the disclosure statement supplements the general reservation in the plan. *Cf. In re Doty*, 129 B.R. 571, 596–97 (Bankr.N.D.Ind.1991) (concluding that a specific reservation included in the amended plan could be integrated with a general reservation in the confirmation order). Far from being in conflict, the two documents support each other. The disclosure statement will, therefore, be read in conjunction with the plan in determining whether litigation rights are reserved under § 1123(b)(3).

### 3. 11 U.S.C. § 1123(b) Standard

Bankruptcy code § 1123(b) states in pertinent part:

(b) Subject to subsection (a) of this section, a plan may—

. . .

(3) provide for—

(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

(B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for

---

**50.** Case No. 06–1957, Docket 36, at 13–14.

**51.** Case No. 05–15262, Docket 445, § 6.1(f).

**52.** Case No. 05–15262, Docket 446, at 13, 24; Docket 468, attachment 9.

such purposes, of any such claim or interest[.]

11 U.S.C. § 1123(b)(3)(A), (B).

This section codifies the long-recognized power of preservation, which permits chapter 11 debtors to nullify the res judicata effect of a confirmation order for claims that are reserved in the plan. *See Elk Horn Coal Co., LLC v. Conveyor Mfg. & Supply, Inc. (In re Pen Holdings, Inc.),* 316 B.R. 495, 498–99 (Bankr.M.D.Tenn. 2004). The statute does not identify any particular words that must be used to reserve the power to pursue claims after confirmation. *See id.* As a result, the circuits have developed different approaches to the issue.[53] Before turning to Sixth Circuit precedent, it is helpful to consider the legislative history of § 1123(b)(3). In the *Pen Holdings* case, Judge Keith Lundin of the Bankruptcy Court for the Middle District of Tennessee engaged in a well-reasoned and thorough analysis of the history. He focused on the fact that when a statute serves to give notice, such as the one here, it is important to identify who is intended to benefit from that notice. He concluded that "the notice at issue in § 1123(b)(3) is not notice to potential defendants, it is notice to creditors generally that there are assets yet to be liquidated that are being preserved for prosecution by the reorganized debtor or its designee." *Id.* at 500–01. Congress drafted the 1978 statute with the intent of preserving the goal of the 1938 provision (section 216(13) of the Bankruptcy Act) that preserved the debtor's causes of action for the benefit of creditors. *Id.* at 499–500. "The legislative history of § 216(13) 'made clear that its aim was to make possible the formulation and consummation of a plan before completion of the investigation and prosecution of causes of action such as those for previous insider misconduct and mismanagement of the debtor....'" *Id.* at 500 (quoting *Du Voisin v. E. Tenn. Equity, Ltd. (In re S. Indus. Banking Corp.),* 59 B.R. 638 (Bankr.E.D.Tenn.1986) (internal citation omitted)).

The Sixth Circuit dealt with the sufficiency of language necessary to preserve an action under § 1123(b)(3) in *Browning v. Levy,* 283 F.3d 761 (6th Cir. 2002). The *Browning* court held that a general reservation of litigation rights found in the disclosure statement was insufficient to preserve the rights, stating that the reservation "was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding because it did not enable the value of [the plaintiff's] claims to be taken into account in the disposition of the debtor's estate." *Browning,* 283 F.3d at 775. The *Browning* court then noted that the reservation did not list the specific defendant or the factual basis for the claim. *See id. Browning* did not, however, "establish a general rule that naming each defendant or stating the factual basis for each cause of action are the only ways to preserve a cause of action at confirmation of a Chapter 11 plan." *In re Pen Holdings, Inc.,* 316 B.R. at 504. Rather, "[t]he words

**53.** *See In re Pen Holdings, Inc.,* 316 B.R. at 501 n. 6 (listing courts in disagreement); *In re Crowley, Milner & Co.,* 299 B.R. at 847 (noting that courts are divided on this issue); *Cohen v. TIC Fin. Sys. (In re Ampace Corp.),* 279 B.R. 145, 157 (Bankr.D.Del.2002) ("The courts are divided on how specific the language of retention and enforcement must be under § 1123(b)(3)(B) to adequately reserve a cause of action for adjudication at a later date."); Bruce H. White & William L. Medford, *Post-Confirmation Standing and Estoppel: How Much Disclosure Is Necessary,* AM. BANKR. INST. J., May 2005, at 38 (detailing the different standards of specificity required to preserve causes of action post-confirmation in different circuits).

sufficient to satisfy § 1123(b)(3) must be measured in the context of each case and the particular claims at issue[.]" *Id.* The question to be asked under *Browning,* read in the context of the legislative history, therefore, is whether "the reservation allow[ed] creditors to identify and evaluate the assets potentially available for distribution[.]" *Id.*

### 4. The Reservation Is Sufficient

■ The reservation of rights found in the plan is similar to the general reservation of litigation rights rejected by *Browning,*[54] so that by itself it would not be adequate to preserve the claims. However, as noted above, the plan's general reservation of rights is supplemented by information in the disclosure statement. The information supplied by the disclosure statement and the claim letter is of the type requested by the *Browning* court and is sufficient to inform the creditors of the potential distribution.

All the elements specifically addressed in *Browning* are present in the claim letter. First, the claim letter states that it serves as notice against "the current and former directors and officers of Debt-

ors."[55] This provides creditors with information about the class of persons the estate might have claims against. Second, the claim letter contains seven bullet points listing factual allegations of wrongdoing.[56] These factual allegations provide creditors with information about the estates' potential claims. And third, the claim letter states that the anticipated damages for these claims exceed "$20 million."[57] This information gives creditors an idea of the potential amount available for distribution following the successful adjudication of these claims. Further, while the claim letter is addressed to the present and former officers, directors, managers, and members of RDI, the disclosure statement references the letter in the same paragraph as the words "such claims are preserved for the benefit of Debtors' unsecured creditors."[58] A creditor reading the disclosure statement would, therefore, know to consider the claims made in the claim letter when evaluating the disposition of the debtors' estates.

The Zelch Defendants argue that the claim letter lacks specificity because it does not include each cause of action

---

**54.** In *Browning,* the purported reservation stated:

In accordance with section 1123(b) of the Bankruptcy Code, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under section 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code.

*Browning,* 283 F.3d at 774–75.

**55.** Case No. 05–15262, Docket 468, attachment 9.

**56.** Case No. 05–15262, Docket 468, attachment 9.

**57.** Case No. 05–15262, Docket 468, attachment 9.

**58.** Case No. 05–15262, Docket 446, at 24. The Zelch Defendants make an additional minor argument that can be disposed of marginally. (Case No. 06–1957, Docket 47, at 6–7). They argue that the term "Litigation Rights" is defined in the plan to include any claims "that the Debtors or their Estates may hold against any person." The claim letter, however, states claims against the debtors themselves. Therefore, they argue, the claims mentioned in the letter cannot be "Litigation Rights" under the plan. However, what the Zelch Defendants ignore is the language in the disclosure statement incorporating the letter. The letter might list claims against the debtors, but the disclosure statement uses the letter to show what claims might exist for the benefit of the estate.

raised in the complaint.[59] In particular, they note that there is no discussion of fraudulent transfers, conversion, unjust enrichment, or equitable subordination.[60] However, as discussed above, *Browning* does not establish a rule that each reserved claim must be specifically listed. In fact, the *Browning* court did not note the specific causes of action among the elements of specificity it found lacking in the debtor's reservation of litigation rights. *Browning*, 283 F.3d at 774–75. *But see Slone v. M2M Int'l, Inc. (In re G–P Plastics, Inc.)*, 320 B.R. 861, 868 (E.D.Mich. 2005) (finding significance in the fact that the plan failed to list the specific causes of action preserved); *In re Crowley, Milner & Co.*, 299 B.R. at 850 & n. 3 (noting the significance of the confirmed plan's failure to list specific causes of action). Listing the specific causes of action would no doubt increase the reservation's specificity. *Browning* did not, however, make this a requirement and the court declines to engraft an additional requirement on to *Browning* that would have the effect of making it harder to preserve potential assets for the benefit of creditors.

For these reasons, the Zelch Defendants' request for dismissal based on res judicata is denied.

### B. Dismissal Based on Federal Rule of Civil Procedure 9(b)

The Zelch Defendants also claim that count I (Fraudulent Transfers Based Upon Actual Fraud) should be dismissed for failure to allege fraud with particularity as required by civil rule 9.[61] The plaintiff argues that rule 9 does not apply because this count alleges fraudulent transfer rather than common law fraud.[62]

### 1. The Standard of Particularity Required by Rule 9

■ Federal civil rule 9 provides that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." FED. R. CIV. P. 9(b). The purpose of this rule is to provide defendants with fair notice of the substance of the plaintiff's claim so that the defendant may prepare a responsive pleading. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.1988). Rule 9(b) should be read "in harmony" with rule 8, which requires a " 'short and plain statement of the claim' " that is to be " 'simple, concise, and direct.' " *Id.* (quoting FED. R. CIV. P. 8(a), (e)). Accordingly, the Sixth Circuit reads rule 9 "liberally, ... requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993) (internal quotation marks and citation omitted). Regardless, "allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id.* at 162 (internal quotation marks and citation omitted).

Courts may relax the requirements of rule 9(b) when a claimant alleges facts particularly within the knowledge of the defendants. *Michaels Bldg. Co.*, 848 F.2d

---

59. Case No. 06–1957, Docket 47, at 6. The Zelch Defendants also argue that the letter does not contain the names of the defendants, the factual basis for each claim, and the value of the claims, but an examination of the letter shows those elements in plain language.

60. Case No. 06–1957, Docket 47, at 6.

61. Case No. 06–1957, Docket 36, at 14–17.

62. Case No. 06–1957, Docket 44, at 9–10.

at 680. For example, courts in this circuit have denied rule 9(b) motions in complex cases where no discovery has taken place, in complex securities fraud actions, and in bankruptcy proceedings "when the plaintiff is a third party outsider to the allegedly fraudulent transaction which, initially, has only second hand information upon which to rely in framing issues." *Official Comm. of Unsecured Creditors v. ASEA Brown Boveri, Inc. (In re Grand Eagle Cos., Inc.)*, 288 B.R. 484, 495 (Bankr. N.D.Ohio 2003); *see also, e.g., Michaels Bldg. Co.*, 848 F.2d at 680; *Pittiglio v. Mich. Nat'l Corp.*, 906 F.Supp. 1145, 1152 (E.D.Mich.1995).

### 2. Rule 9 Applies to Count I

Count I seeks, by authority of 11 U.S.C. §§ 544(b), 550, 551 and Ohio Revised Code § 1336.04, to avoid allegedly fraudulent transfers made by the Zelch Defendants.[63] The plaintiff contends that rule 9(b) does not apply to fraudulent transfer actions based on actual fraud.[64]

██ The plaintiff bases his interpretation of rule 9(b) on Ohio case law. The Supreme Court of Ohio has ruled that Ohio civil rule 9(B), which is identical to federal rule of civil procedure 9(b), does not apply to fraudulent conveyance claims made under Ohio Revised Code § 1336.04. *See Wagner v. Galipo*, 50 Ohio St.3d 194, 553 N.E.2d 610, 613 (1990); *see also Carter–Jones Lumber Co. v. Denune*, 132 Ohio App.3d 430, 725 N.E.2d 330, 333 (1999). While a decision of Ohio's highest court regarding a rule of procedure identical to a federal rule of civil procedure is entitled to

great deference, that opinion is not binding on a federal forum. *See Van–American Ins. Co. v. Schiappa*, 191 F.R.D. 537, 543 (S.D.Ohio 2000); *see also In re Grand Eagle Cos., Inc.*, 288 B.R. at 495–97.

Rule 9 requires that "all averments of fraud" be stated with particularity. FED. R.CIV.P. 9(b). Count I alleges fraudulent transfer based upon "actual fraud." [65] The plaintiff has, therefore, alleged actual fraud on the part of the Zelch Defendants. While the claim is made under the Ohio Uniform Fraudulent Transfer Act, the titling of the action is not dispositive of the issue. *See Van–American Ins. Co.*, 191 F.R.D. at 543. Consequently, the plaintiff is required to state with particularity the circumstances constituting fraud according to the requirements imposed by rule 9(b).

### 3. Count I Does Not Comply with Rule 9

██ The allegations in the complaint tell a story of potential fraud or wrongdoing. This story, however, does not rise to the level of specificity required to plead fraud under rule 9(b). The Zelch Defendants list several allegations in the complaint and argue that "[n]one of these allegations includes a concise statement of any misrepresentation, how the statement was false, to whom it was made and the time and place that the misrepresentation occurred." [66] The court agrees. While the complaint adequately alleges the context of the fraudulent scheme, the fraudulent intent of the defendants, and the purported injury resulting from the fraud, it does not

---

63. Case No. 06–1957, Docket 1, ¶ 118. Ohio Revised Code § 1336.04 states: "A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor ... if the debtor made the transfer or incurred the obligation ... (1) With actual intent to hinder, delay, or defraud any creditor of the debtor[.]" OHIO REV.CODE § 1336.04(A)(1).

64. Case No. 06–1957, Docket 44, at 9.

65. Case No. 06–1957, Docket 1, ¶¶ 110–18.

66. Case No. 06–1957, Docket 36, at 16.

sufficiently plead the time, place, and content of the alleged misrepresentations. Because of his outsider status, the plaintiff is not expected to plead facts solely within the defendants' knowledge, but rule 9 does require, at a minimum, that the plaintiff identify the transactions alleged to be fraudulent. *See U.S. Sec. & Exch. Comm'n v. Blackwell,* 291 F.Supp.2d 673, 690–91 (S.D.Ohio 2003). The complaint, as is, does not meet this standard.

 "However, in the absence of a motion for more definite statement under Rule 12(e), dismissal of a fraud claim, solely on account of a party's failure to satisfy the requirements of Rule 9(b), is inappropriate." *Res. Title Agency, Inc. v. Morreale Real Estate Servs., Inc.,* 314 F.Supp.2d 763, 776 (N.D.Ohio 2004) (citing *Coffey,* 2 F.3d at 162). Therefore, if the plaintiff wishes to proceed on his claims of fraudulent transfer based on actual fraud, he must amend his pleading to allege which transactions were fraudulent based on actual fraud, the approximate dates of the misrepresentations that underlie the alleged fraud, and the manner in which those underlying misrepresentations were made. *See id.* The amendment should give sufficient notice of the misrepresentations to allow the defendants to give an informative answer responding to the allegations of fraud. *Coffey,* 2 F.3d at 162.

## C. Dismissal Based on Federal Rule of Civil Procedure 19

Next, the Zelch Defendants argue that the court must dismiss counts I through VII because the plaintiff failed to join indispensable parties under civil rule 19.[67] The court reads this as a motion to dismiss under rule 12(b)(7).

----

67. Case No. 06–1957, Docket 36, at 17.

## 1. The Requirements of Rule 19

Rule 19 states in relevant part:

(a) ... A person ... shall be joined as a party in [an] action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party....

(b) ... If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED.R.CIV.P. 19.

Rule 19 creates a three-part test. *See Keweenaw Bay Indian Cmty. v. Michigan,* 11 F.3d 1341, 1345 (6th Cir.1993). First,

the court must consider whether a missing party is necessary to the action and should be joined if possible. *Id.* In making this determination, the court looks to whether: (1) complete relief can be accorded without the absent party, (2) the party's absence will prejudice or harm that party, or (3) the party's absence will prejudice or harm the current defendants. *See* FED.R.CIV.P. 19(a); *Keweenaw Bay Indian Cmty.*, 11 F.3d at 1345. Second, "[i]f the court finds that the absent person or entity falls within either one of these provisions, the party is thus one to be joined if feasible." *Keweenaw Bay Indian Cmty.*, 11 F.3d at 1345. Determining feasibility is a function of jurisdiction. *Id.* " 'If personal jurisdiction is present, the party *shall* be joined; however, in the absence of personal jurisdiction (or if venue as to the joined party is improper), the party cannot properly be brought before the court.' " *Id.* at 1345–46 (quoting *Local 670 v. Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 822 F.2d 613, 618 (6th Cir. 1987)). If the party cannot properly be brought before the court, then the court considers the third branch of the test: whether the case should proceed without the absent party. *Id.* Resolving this question requires the court to analyze the four factors listed in rule 19(b). *Id.*

### 2. The Complaint Does Not Require Dismissal Under Rule 19

The Zelch Defendants argue ·that this case cannot proceed without several additional parties. These parties consist of "a number of very highly regarded professional firms and financial institutions [that] expended enormous due diligence efforts with respect to the transaction at issue and signed off on the transaction, prior to, contemporaneous with, and subsequent to the transaction's closing." [68] If the plaintiff's allegations are true, the Zelch Defendants argue, then these firms must either be liable for gross negligence or be coconspirators to the alleged fraud.[69] Proceeding without them would, therefore, violate rule 19 because complete relief cannot be accorded without them and because their absence would prejudice and harm both the Zelch Defendants and the missing parties.[70]

No entity identified by the Zelch Defendants qualifies as a necessary party under rule 19(a). The Zelch Defendants cite no legal authority to support their proposition that complete relief cannot be accorded or that prejudice or harm will fall on either the current defendants or the non-parties if the non-parties are liable for gross negligence. Indeed, while the defendants and the non-parties may be affected by the non-parties' absence, if these non-parties committed malpractice, then there are multiple legal avenues by which they could be held accountable. *See, e.g.,* 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 19.02[5][a] (3d ed.2007) (identifying impleader as one available option). The Zelch Defendants provide no basis for their argument that these non-parties are "indispensable," and they fail to provide any argument that their joinder is unfeasible. Dismissal of these claims for failure to join an indispensable party is, therefore, unwarranted.

The Zelch Defendants' motion is equally unsupported with respect to their second theory—i.e., the non-parties were co-conspirators to the alleged fraud. If these absent parties are co-conspirators, then rule 19 would not compel joinder because joint tortfeasors are permissive, not neces-

---

**68.** Case No. 06–1957, Docket 36, at 18.

**69.** Case No. 06–1957, Docket 36, at 18.

**70.** Case No. 06–1957, Docket 36, at 18–19.

sary, parties. *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1198 (6th Cir. 1983) ("It is beyond peradventure that joint tortfeasors are not indispensable parties in the federal forum."). Therefore, full and complete relief can be accorded in a later suit against them.

The just adjudication of this case does not require the addition of any absent party. The Zelch Defendants' request to dismiss counts I through VII for failure to join an indispensable party under rule 19 is, therefore, denied.

### D. More Definite Statement Under Federal Rule of Civil Procedure 12(e)

Finally, the Zelch Defendants argue that count III (Breach of Fiduciary Duty) requires a more definite statement under civil rule 12(e).[71]

#### 1. The Rule 12(e) Standard

Rule 12(e) states:

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired....

FED.R.CIV.P. 12(e).

▪ Because of rule 8's liberal pleading standards, motions for more definite statements are not favored and courts grant them sparingly. *See Jakovich v. Hill*, No. 1:05 CV 2126, 2005 WL 3262953, *3, 2005 U.S. Dist. LEXIS 30180, at *8–9 (N.D.Ohio Nov. 30, 2005). Rule 12(e) addresses unintelligibility rather than lack of

detail, which means that motions for a more definite statement should not be used as a substitute for discovery. *See Schwable v. Coates*, No. 3:05 CV 7210, 2005 WL 2002360, at * 1 (N.D.Ohio Aug.18, 2005) (citing *Innovative Digital Equip., Inc. v. Quantum Tech., Inc.*, 597 F.Supp. 983, 989 (N.D.Ohio 1984)). "[A] motion under Rule 12(e) must be denied where the subject complaint is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail." *Scarbrough v. R–Way Furniture Co.*, 105 F.R.D. 90, 91 (E.D.Wis. 1985), *cited by Schwable*, 2005 WL 2002360, at *1.

#### 2. Count III Does Not Require a More Definite Statement Under Rule 12(e)

The Zelch Defendants argue that count III requires a more definite statement because the complaint refers to a number of corporate entities collectively as "RDI," when the entities were governed by different operating agreements and subject to different states' laws.[72] A more definite statement is needed, they contend, because they cannot ascertain which duties to which companies under which jurisdiction are alleged to have been breached.[73]

▪ Rule 8 requires that the complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). As the federal rules are "[i]ntended only to provide notice to the opposing party of claims and defenses, [they] call for general allegations in an initial pleading, rather than detailed facts pleading." 2 MOORE, ET AL., *supra*, § 12.36[2]. In this case, the complaint describes the actions taken by the

---

**71.** Case No. 06–1957, Docket 36, at 19.

**72.** Case No. 06–1957, Docket 36, at 19.

**73.** Case No. 06–1957, Docket 36, at 19–20.

Zelch Defendants that allegedly breached their fiduciary duties of loyalty, care, and good faith. This is enough information to put the Zelch Defendants on notice and permit them to file an answer to the complaint. *Cf. Platsis v. E.F. Hutton & Co.,* No. G83–784 CA, 1985 WL 447, at *5 (W.D.Mich. Jan.11, 1985) (unpublished) (holding that a complaint, which did not specify in detail the nature of the fiduciary duty owed, the particulars of the contract between the parties, or the specific sections of the regulations allegedly violated, did not require a more definite statement).

The Zelch Defendants insist that they cannot formulate an answer to the complaint because the plaintiff failed to distinguish between corporate entities.[74] The court finds this position unlikely considering the Trivest Manager Defendants' ability to respond to the same allegations in their motion to dismiss.[75] *Cf. Innovative Digital Equip., Inc.,* 597 F.Supp. at 988 (denying a rule 12(e) motion where the defendant was able to discern enough from the complaint to file a rule 12(b)(6) motion and thereby assert that the complaint failed to state a legal claim for which relief could be granted). Given the Trivest Manager Defendants' response, the complaint cannot be "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." FED. R.CIV.P. 12(e). The court finds, therefore, that the complaint satisfies the pleading requirements of rule 8(a) and does not require a more definite statement. Any lack of detail found in the complaint can be fleshed out during discovery.

For these reasons, the Zelch Defendants' request for a more definite statement is denied.

## II. The Trivest Manager Defendants' Motion to Dismiss

In addition to alleging breach of fiduciary duty against the Zelch Defendants, count III includes allegations against the Trivest Manager Defendants. The Trivest Manager Defendants request dismissal of count III, arguing that: (1) the court lacks subject matter jurisdiction, (2) the plan did not preserve the claim against them, and (3) the plaintiff failed to properly plead the breach of fiduciary duty claim.[76] For the reasons stated below, the Trivest Manager Defendants' motion to dismiss is denied.

### A. Dismissal Based on Lack of Subject Matter Jurisdiction

"Lack of subject matter jurisdiction is an affirmative defense that a defendant may assert in a motion to dismiss." *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n,* 287 F.3d 568, 573 (6th Cir.2002). When the subject matter jurisdiction of a claim is challenged, the burden of proving jurisdiction rests with the plaintiff. *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990). "The plain-

---

74. Case No. 06–1957, Docket 47, at 12.

75. Case No. 06–1957, Docket 32, at 8–19.

76. Case No. 06–1957, Docket 31, 32. The Trivest Manager Defendants' motion references a fourth reason for dismissal—i.e., "the Complaint constitutes an impermissible shotgun pleading." (Docket 31, at 5). This reason is referenced only briefly in their brief. (Docket 32, at 8 n. 7). The case cited from the Eleventh Circuit admonishes the practice of filing complaints with numerous general allegations incorporated by reference into multiple claims for relief. *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1333 (11th Cir.1998). The Trivest Manager Defendants cite no Sixth Circuit precedent on this issue, and it is far from clear that the complaint at issue is deficient on these ground. Regardless, the remedies mentioned by *Johnson Enterprises* for a "shotgun complaint" did not include dismissal of the complaint. *Id.*

tiff will survive the motion to dismiss by showing 'any arguable basis in law' for the claims set forth in the complaint." *Mich. S. R.R. Co.*, 287 F.3d at 573 (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir.1996)).

The Trivest Manager Defendants argue that the court lacks subject matter jurisdiction because the breach of fiduciary duty claim does not "relate to" or maintain a "close nexus" to the bankruptcy proceeding.[77] The plaintiff responds by citing factually similar cases where courts in different districts found the requisite "close nexus."[78]

### 1. Post-confirmation Jurisdiction

Bankruptcy courts derive jurisdiction from 28 U.S.C. §§ 1334 and 157. Section 1334 gives the district court "original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b). Section 157 permits the district court to refer that jurisdiction to the bankruptcy court, which the judges of the Northern District of Ohio have done. 28 U.S.C. § 157(a). Further, § 157(b) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a' case under title 11 . . . and may enter appropriate orders and judgements . . . ." 28 U.S.C. § 157(b)(1). Bankruptcy courts may also "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1).

Cases referred to as "core" proceedings include those claims that either invoke a substantive right created by federal bankruptcy law or which could not exist outside the bankruptcy. *Browning*, 283 F.3d at 773 (citing *Sanders Confectionery Prods., Inc.*, 973 F.2d at 483). Non-core, "related to" proceedings involve any action, the outcome of which " 'could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.' " *In re Dow Corning Corp.*, 86 F.3d at 489 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)). Within this broad definition, a claim is "related to" the bankruptcy if any recovery gained as a result of a successful action would have resulted in an asset available for distribution to the debtor's creditors. *Browning*, 283 F.3d at 773.

The *Pacor* and *Dow Corning* decisions analyze the jurisdictional issue in the context of pre-confirmation proceedings. As the Sixth Circuit Bankruptcy Appellate Panel recognized in *In re Thickstun Bros. Equipment Co., Inc.*, applying the *Pacor* test can be difficult in the post-confirmation context because the bankruptcy estate no longer exists. 344 B.R. at 521. To resolve this problem, the court in *In re Thickstun Bros. Equipment Co., Inc.* cited the refinement adopted by the Third Circuit in *Binder v. Price Waterhouse & Co., LLP (In re Resorts International, Inc.)*, 372 F.3d 154 (3d Cir.2004). The Third Circuit reviewed the approaches employed by various courts in analyzing post-confirmation bankruptcy jurisdiction and concluded that "the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction." *In re Resorts Int'l, Inc.*, 372 F.3d at 166–67. Matters that will typically have this "close nexus," include those that "affect the inter-

---

**77.** Case No. 06–1957, Docket 32, at 1–4.

**78.** Case No. 06–1957, Docket 45, at 1–3.

pretation, implementation, consummation, execution, or administration of the confirmed plan." *Id.* at 167.

## 2. Sufficient "Close Nexus" Exists to the Bankruptcy Proceeding

The parties disagree as to whether this "close nexus" exists. The Trivest Manager Defendants argue that nothing about the fiduciary duty claim requires the court to interpret, implement, consummate, execute, or administer the plan.[79] The plaintiff argues that there is a close nexus to the bankruptcy case because the claim arose prepetition and was central to the plan and estate recoveries.[80]

■ The Trivest Manager Defendants' central argument is that the close nexus required for related to jurisdiction "simply does not exist with respect to the state law breach of fiduciary duty claim in Count III."[81] They cite this court's decision in *Schramm v. TMS Mortgage, Inc. (In re Schramm)*, Ch. 13 Case No. 01–11026, Adv. No. 05–1613 (Bankr.N.D.Ohio July 6, 2006) (unpublished memorandum of opinion), where the court found that a cause of action under the Fair Debt Collection Practices Act did not have a close nexus to the original bankruptcy proceeding. The facts in this case are not so similar to those in *In re Schramm* as to warrant the same result. The *In re Schramm* opinion focused on the fact that any recovery would go to the debtors, not the estate, and therefore would have no impact on the estate's administration. *In re Schramm*, No. 05–1613, at *8. In this case, the plaintiff brings count III for the benefit of the estate's former creditors. While the potential to increase recovery to the creditors or former creditors of the estate is not enough alone to confer jurisdiction, poten-

tial benefit to creditors or former creditors weighs in favor of jurisdiction. *See AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust)*, 335 B.R. 309, 324 (Bankr.D.Del. 2005).

Further, the Trivest Manager Defendants argue that related to jurisdiction does not exist because count III is based on state law. In support, they cite this paragraph from *In re Resorts International, Inc.*:

> Nonetheless, we believe this proceeding lacks a close nexus to the bankruptcy plan or proceeding and affects only matters collateral to the bankruptcy process. The resolution of these malpractice claims will not affect the estate; it will have only incidental effect on the reorganized debtor; it will not interfere with the implementation of the Reorganization Plan; though it will affect the former creditors as Litigation Trust beneficiaries, they no longer have a close nexus to bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims; and as stated, the jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157. For these reasons, the malpractice claims here lack the requisite close nexus to be within the Bankruptcy Court's "related to" jurisdiction post-confirmation.

*In re Resorts Int'l, Inc.*, 372 F.3d at 169. This language, however, is not instructive to the case at hand.

As the plaintiff aptly points out, *In re Resorts International, Inc.* is distinguishable because the claims in this case arose prepetition and, more importantly, were

---

79. Case No. 06–1957, Docket 32, at 3.

80. Case No. 06–1957, Docket 45, at 2.

81. Case No. 06–1957, Docket 32, at 3.

reserved in the bankruptcy proceeding under § 1123(b). Several courts have distinguished *In re Resorts International, Inc.* on this basis. *Compare In re Resorts Int'l, Inc.*, 372 F.3d at 169 (no jurisdiction where malpractice claims arose after confirmation), *with In re AstroPower Liquidating Trust*, 335 B.R. at 325 (jurisdiction found where court had related to jurisdiction over the claims and those claims were preserved by the plan), *and Michaels v. World Color Press, Inc. (In re LGI, Inc.)*, 322 B.R. 95, 103 (Bankr.D.N.J.2005) (jurisdiction where claim was specifically reserved in the earlier proceeding).[82] Further, while the Third Circuit took issue with the fact that a creditors' trust was prosecuting the claims instead of the debtor or the estate, "*Resorts* does not so eliminate, wholesale, related to jurisdiction as to all post-confirmation trust litigation in the bankruptcy court." *In re LGI, Inc.*, 322 B.R. at 104; *see also EXDS, Inc. v. CB Richard Ellis, Inc. (In re EXDS, Inc.)*, 352 B.R. 731, 738–39 (Bankr.D.Del.2006); *In re AstroPower Liquidating Trust*, 335 B.R. at 324–25. Indeed, the Resorts court favorably cited two cases where jurisdiction was upheld where the litigating trustee was a party. *In re Resorts Int'l, Inc.*, 372 F.3d at 166–67 (citing *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 372–73 (4th Cir.1996), and *In re Resorts Int'l*, 199 B.R. 113, 118–19 (Bankr.D.N.J.1996)); *see also In re EXDS, Inc.*, 352 B.R. at 739 (citing same).

In this case, the challenged claims arose prepetition, as opposed to several years after confirmation as in *Resorts*. *See In re Resorts Int'l, Inc.*, 372 F.3d at 169. Further, the defendants acknowledge that the court would have had related to jurisdiction over these claims if they were brought at confirmation, as jurisdiction over these claims at the time of confirmation is an essential element to the defendants' res judicata analysis.[83] *See Browning*, 283 F.3d at 772–73. If the court had related to jurisdiction over the claims in count III before confirmation, and the plan and disclosure statement preserve those claims as discussed above in relation to the Zelch Defendants and below in relation to the Trivest Manager Defendants, then the adjudication of the claims requires the court to implement, consummate, and execute the plan. *See In re LGI, Inc.*, 322 B.R. at 103. Unlike the malpractice claim in *Resorts*, the claims in count III were not an "independent afterthought of the post-confirmation trustee," but were contemplated pre-confirmation and reserved in the plan, thereby "maintaining the close nexus which confers bankruptcy court jurisdiction." *Id.* at 106.

Finally, the Trivest Manager Defendants cite two additional cases to support their argument.[84] The first, *Grimes v. Graue (In re Haws)*, 158 B.R. 965, 970–71 (Bankr.S.D.Tex.1993), found no jurisdiction over allegedly pre-confirmation claims

---

**82.** To a lesser extent, courts consider whether the claims arose before or after the bankruptcy petition. *See Shandler v. DLJ Merchant Banking, Inc. (In re Insilco Techs., Inc.)*, 330 B.R. 512, 525 (Bankr.D.Del.2005) (no jurisdiction where claims arose prepetition but were not specifically reserved in the plan).

**83.** Additionally, the court's own analysis concludes that these claims are, at least, related to the earlier bankruptcy proceeding as any recovery under count III would represent an asset available for distribution to creditors. *See Browning*, 283 F.3d at 773. The successful or unsuccessful adjudication of these claims before confirmation could have altered the Debtors' rights, liabilities, or options, and thereby impacted the handling and administration of the bankrupt estate. *See In re Dow Corning Corp.*, 86 F.3d at 489.

**84.** Case No. 06–1957, Docket 32, at 3.

which were brought after confirmation. The second, *Shandler v. DLJ Merchant Banking, Inc. (In re Insilco Techs., Inc.)*, 330 B.R. 512, 525–26 (Bankr.D.Del.2005), found jurisdiction lacking over claims that arose prepetition, including a state law claim for breach of fiduciary duty. The Trivest Manager Defendants provide no argument for why the court should follow these opinions, and both cases are distinguishable. The courts in both *In re Haws* and *In re Insilco Technologies, Inc.* note that the plans and disclosure statements contained either no mention of the reserved claims or only a general reservation of litigation rights, both insufficient to preserve jurisdiction. *In re Insilco Techs., Inc.*, 330 B.R. at 525–26; *In re Haws*, 158 B.R. at 970–71. Unlike these cases, the plan and disclosure statement here provide sufficient notice to creditors of the claims brought by the plaintiff, thus preserving them for later adjudication and requiring the court to implement, consummate, and execute the plan in this adversary proceeding.

The plaintiff met his burden of showing that a close nexus exists between the present action and the earlier bankruptcy proceeding. The Trivest Manager Defendants' request to dismiss count III for lack of subject matter jurisdiction is, therefore, denied.

## B. Dismissal Based on Res Judicata

The Trivest Manager Defendants argue that count III should be dismissed because res judicata bars the plaintiff from bringing claims that the plan failed to preserve. To the extent that they make the same

arguments made by the Zelch Defendants, there is no need to repeat the analysis.

 The Trivest Manager Defendants do, however, offer three additional arguments. First, they contend that even if the disclosure statement and the claim letter preserved claims against some potential defendants, they did not preserve claims against Mr. Koehn.[85] This argument is premised on the fact that Mr. Koehn is not specifically named in schedule A attached to the claim letter and that the claim letter was presumably not even sent to him. This misconstrues the purpose of § 1123(b)(3). As noted in *In re Pen Holdings, Inc.*, "the history of § 1123(b)(3) plainly shows ... the notice at issue in § 1123(b)(3) is not notice to potential defendants, it is notice to creditors generally that there are assets yet to be liquidated that are being preserved for prosecution by the reorganized debtor or its designee." 316 B.R. at 500–01. The claim letter states that it serves as notice against "the current and former directors and officers of Debtors."[86] Combined with the language in the disclosure statement incorporating the claim letter, this provides creditors with information about the class of persons the estate might have claims against. This class of persons includes Mr. Koehn as a member of the board of managers of one of the debtors from April through November 2003.[87] The disclosure statement, therefore, preserves count III against Mr. Koehn, and the fact that Mr. Koehn may not have received a copy of the claim letter is irrelevant.

 Second, the Trivest Manager Defendants argue that if the plan reserves any claims, it only reserves claims falling

---

85. Case No. 06–1957, Docket 32, at 6–7; Docket 46, at 5.

86. Case No. 05–15262, Docket 468, attachment 9.

87. Case No. 06–1957, Docket 1, ¶ 24.

under chapter 5 of the bankruptcy code.[88] This argument focuses on the definition of "Litigation Rights" in the plan. "Litigation Rights" are defined as encompassing all claims, "including without limitation, claims or causes of action arising under or pursuant to Chapter 5 of the Bankruptcy Code."[89] As a claim for breach of fiduciary duty is not included in chapter 5, the Trivest Manager Defendants argue that this claim should be dismissed. This interpretation of the plan, however, stretches the meaning of the definition. The definition says nothing about excluding other claims or causes of action or limiting causes of action to *only* those arising under or pursuant to chapter 5. Further, the Trivest Manager Defendants' interpretation would require the court to ignore the disclosure statement and the claim letter, which specifically address breaches of fiduciary duty. This argument is, therefore, unpersuasive.[90]

Third, the Trivest Manager Defendants argue that the plaintiff has no standing because the disclosure statement requires individual unsecured creditors to bring these claims.[91] This argument is based on a comparison of two sections in the disclosure statement. Article III, section I states that the "Plan provides that . . . in accordance with Section 1123(b) . . . the Creditors Trust shall retain all Litigation Rights against any Person."[92] In comparison, article III, section J, which incorporates the claim letter, states that the "Term Sheet provides that any such claims [those in the claim letter] are preserved for the benefit of Debtors' unsecured creditors."[93] The Trivest Manager Defendants argue that "[b]y its clear and unambiguous language, [section J] indicates that creditors retained the rights that they individually would otherwise have to assert their own causes of action, if any, for damages that they themselves may have suffered, as distinct from those of the prepetition Debtors."[94] From this, the Trivest Manager Defendants note in the margin that, therefore, the plaintiff, as liquidating trustee, does not have standing to bring the claims on behalf of the individual creditors.[95]

This is not a reasonable interpretation of section J. The plan entrusts all Litigation Rights to the Creditors Trust.[96] There is no indication in the plan or disclosure statement that individual creditors were meant to bring their own claims.[97]

88. Case No. 06–1957, Docket 46, at 5–6.

89. Case No. 05–15262, Docket 445, § 1.47.

90. The Trivest Manager Defendants make the same argument with respect to the "Preservation of Rights of Action" found in article III, section I of the disclosure statement. They argue that "Section I, . . . merely states what is included in the Plan, *i.e.* that Litigation Rights, as defined in the Plan, will be retained and prosecuted by the Creditors Trust." (Case No. 06–1957, Docket 46, 6–7). Just as the definition of Litigation Rights does not exclude the breach of fiduciary duty claims, the court is equally unconvinced by the Trivest Manager Defendants' argument here with respect to the disclosure statement.

91. Case No. 06–1957, Docket 46, at 7–8.

92. Case No. 05–15262, Docket 446, at 24.

93. Case No. 05–15262, Docket 446, at 24.

94. Case No. 06–1957, Docket 46, at 7 (emphasis removed) (footnotes omitted).

95. Case No. 06–1957, Docket 46, at 7 n. 9.

96. Case No. 05–15262, Docket 445, § 6.1(f).

97. The Trivest Manager Defendants' interpretation takes the claim letter out of context. The claim letter was originally sent as "a written demand or notice under the Debtors' Directors, Officers and Private Company Liability Insurance Policy . . . of the claims against the current and former directors and officers of Debtors." (Case No. 05–15262,

The language in section J preserving claims for the benefit of the debtors' unsecured creditors merely indicates the intended beneficiary of any recovery from the claims mentioned in the claim letter. A creditor reading sections I and J would have notice that there were claims left to be adjudicated by the Creditors Trust and, as discussed above, also have notice of the general types of claims, the class of persons those claims were being brought against, the factual allegations underlying those claims, and the anticipated recovery from those claims. Therefore, there is no reason why the language in section I should be read to exclude the claims mentioned in section J.

For the reasons set forth above and for those articulated in connection with the Zelch Defendants' motion, res judicata does not bar the plaintiff from bringing count III against the Trivest Manager Defendants. The Trivest Manager Defendants' request for dismissal based on res judicata is, therefore, denied.

## C. Dismissal Based on Federal Rule of Civil Procedure 12(b)(6)

Finally, the Trivest Manager Defendants argue that the plaintiff failed to properly plead the breach of fiduciary duty claim, and count III should be dismissed for failure to state a claim against them.

Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted[.]" FED.R.CIV.P. 12(b)(6). In deciding such a motion, the court "must 'construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief.' " *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 930 (6th Cir.2006) (quoting *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir.2001)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (alterations in original) (citations omitted). If a factual allegation is capable of more than one inference, the court must construe it in the plaintiff's favor. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995). The court need not, however, "accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

The Trivest Manager Defendants argue that the complaint fails to differentiate between RDI and RDH, and ignores applicable Florida and Delaware law on fiduciary duties and the requirements for imposing liability.[98] As this deficiency is cited as a reason for dismissal (rather than as a reason to require a more definite statement such as the one requested by the

---

Docket 468, attachment 9). The claim letter was then attached to the disclosure statement to provide information to creditors about the claims which were being preserved for later adjudication. The Trivest Manager Defendants appear to read the claim letter in the context of its original purpose and not in the context of its relevant purpose as notice to the creditors *regarding the claims preserved by the plan.*

**98.** Case No. 06–1957, Docket 32, at 8–19.

Zelch Defendants), the court will consider it under the standard applicable to a motion to dismiss. The question, then, is whether count III sets forth a claim for which relief can be granted. The plaintiff responds by explaining that count III states a claim under Delaware law based on the manager defendants' status as members of RDH's management committee.[99]

### 1. Delaware Law[100]

The Trivest Manager Defendants argue that the plaintiff did not allege facts to establish a claim for breach of fiduciary duty under Delaware law. The fiduciary duties at issue are those of loyalty and care, which have been imposed on managers of limited liability companies under Delaware law. *See Minn. Invco of RSA # 7, Inc. v. Midwest Wireless Holdings LLC.*, 903 A.2d 786, 797 (Del.Ch.2006); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 156–57 (Del.Ch.2004); *VGS, Inc. v. Castiel*, No. C.A. 17995, 2000 WL 1277372 (Del.Ch. Aug.31, 2000), *aff'd*, 781 A.2d 696, 2001 WL 760856 (Del.2001).

■ In general, the duty of loyalty "mandates that [a] director refrain from self-dealing." 1 R. Franklin Balotti & Jesse A. Finkelstein, Delaware Law of Corporations & Business Organizations § 4.35 (3d ed.2007). This duty "is not limited to cases involving a financial or other cognizable fiduciary conflict of interest. It also encompasses cases where the fiduciary fails to act in good faith [because] '[a] director cannot act loyally towards the corporation unless she acts in the good faith belief that her actions are in the corporation's best interest.' " *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del.2006) (quoting *Guttman v. Huang*, 823 A.2d 492, 506 n. 34 (Del.Ch. 2003)). Consequently, director oversight liability can be imposed based on bad faith conduct which violates the duty of loyalty. *Id.* at 369–70. The duty of care, on the other hand, requires directors to exercise a requisite degree of care in the process of making decisions and in other aspects of their directorial responsibilities. *See generally* Balotti & Finkelstein, *supra*, § 4.34.

■ "In an effort to encourage the full exercise of managerial powers, Delaware law protects the managers of a corporation through the business judgment rule." *Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch.2007). Delaware law "presumes that 'in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.' " *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 52 (Del.2006) (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del.1984)).[101] Delaware courts have applied the business judgment rule in the limited liability company context. *See, e.g., VGS, Inc.*, 2000 WL 1277372, at *5.

---

**99.** Case No. 06–1957, Docket 45, at 11–20.

**100.** It is undisputed that RDH was a Delaware limited liability company and the scope of the managers' fiduciary duties to it are defined by Delaware law. *See generally* RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 309 (1971) (noting that the law of the "state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship . . .").

**101.** *Aronson* was overruled on other grounds before the Delaware Supreme Court issued the *Disney* decision.

■ The fiduciary duties and the liability of managers of limited liability companies may be expanded or restricted by agreement under Delaware law, which states that:

(c) To the extent that, at law or in equity, a member or manager or other person has duties (including fiduciary duties) to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement, the member's or manager's or other person's duties may be expanded or restricted or eliminated by provisions in the limited liability company agreement; provided, that the limited liability company agreement may not eliminate the implied contractual covenant of good faith and fair dealing.

. . .

(e) A limited liability company agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a member, manager or other person to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement; provided, that a limited liability company agreement may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing.

DEL.CODE ANN. tit. 6, § 18–1101(c), (e). "There is an assumed default to traditional corporate governance fiduciary duties where the agreement is silent, or at least not inconsistent with the common law fiduciary duties." Myron T. Steele, *Judicial Scrutiny of Fiduciary Duties in Delaware Limited Partnerships and Limited Liability Companies*, 32 DEL. J. CORP. L. 1, 26 (2007).

### 2. The Sufficiency of the Complaint

The Trivest Manager Defendants make several arguments challenging the sufficiency of the complaint. They argue initially that the complaint fails to state a claim for breach of the fiduciary duty of loyalty because the RDH limited liability agreement eliminates liability for such a breach. They also argue that even if the agreement does not eliminate liability, the complaint fails to allege sufficient facts to state a claim for breach of the duties of loyalty and care.

■ The argument that the RDH agreement eliminates the managers' potential liability is based on this provision:

No Covered Person shall be liable to the Company or any other Covered Person for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence or willful misconduct.[102]

The argument that this provision eliminates liability for breach of the duty of loyalty fails because the provision does not restrict or limit the managers' fiduciary obligations; it only limits their liability to the extent they acted in good faith. As

---

102. Case No. 06–1957, Docket 32, exh. 2, § 12.2(a); *see also* Docket 32, exh. 2, § 1.1 (defining the term "covered person" to include the management committee and any of its members).

detailed above, under Delaware law a claim for breach of the duty of loyalty can be premised on a failure to act in good faith. Consequently, an agreement that does not alter a manager's duty of loyalty and only restricts liability to the extent of actions performed and omissions made in good faith, does not eliminate potential liability for breach of the duty of loyalty.

The Trivest Manager Defendants next argue that the complaint fails to state a claim because it does not plead specific facts to overcome the presumption in their favor which is imposed by the business judgment rule. They cite Delaware case authority on this issue. The heightened pleading standard required by Delaware courts does not, however, apply in federal courts, which are governed by the notice pleading standard in civil rule 8. *See* FED. R. BANKR. P. 7008 (incorporating FED. R. CIV. P. 8(a) requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief"). To properly plead a breach of fiduciary duty claim under Delaware law in federal court, the plaintiff is only required to meet the notice pleading requirements of civil rule 8. *See Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 237 (3d Cir.2005); *see also Panos v. Sullivan (In re Sabine, Inc.)*, Ch. 11 Case No. 03–10668–JNF, Adv. No. 05–1019–JNF, 2006 WL 1045712, at *4 (Bankr.D.Mass. Feb.27, 2006). The business judgment rule is, however, treated as an affirmative defense. *See In re Tower Air, Inc.*, 416 F.3d at 238. "[T]he prevailing rule is that a complaint showing on its face that relief is barred by an affirmative defense is properly subject to a 12(b)(6) motion. . . ." *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir.1978). Therefore, when a plaintiff asserts that the rule does not negate his

claim, he must plead that he "overcomes the presumption created by th[e] rule." *In re Tower Air, Inc.*, 416 F.3d at 238.

As discussed above, the plaintiff was not required to plead specific facts to overcome the business judgment rule. Moreover, to the extent the rule is treated as an affirmative defense, the complaint (on its face) is not barred by the defense because the plaintiff has pled that the defendants are not protected by the rule by "virtue of their financial interests in RDI and in the LBO." [103]

That leaves for consideration whether count III states a claim under Delaware law. The plaintiff argues that he has pled a number of ways in which the Trivest Manager Defendants breached their duty of loyalty. One of these is the managers' failure to exercise oversight by failing to take steps to address known issues regarding faulty accounting and operational systems.[104] Consideration of the complaint under the applicable standard leads to the conclusion that this states a claim.

Delaware law imposes director oversight liability and "[w]here directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith." *Stone*, 911 A.2d at 370 (footnotes omitted). The conditions necessary for director oversight liability include the situation where:

(a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or prob-

---

**103.** Case No. 06–1957, Docket 1, ¶ 127.

**104.** Case No. 06–1957, Docket 45, at 14–15.

lems requiring their attention. In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations.

*Id.*

The plaintiff alleges that the Trivest Manager Defendants intentionally failed to exercise their oversight responsibilities, which caused damage for which they are liable. The complaint alleges that CFO Brodeur gave the managers notice of serious operational irregularities at RDI involving the overstatement of accounts receivables, weakness in internal controls, deficiencies in information technologies and inflated earnings. It also alleges that they disregarded their responsibility to deal with these issues, choosing instead to fire Brodeur upon completion of the LBO. The complaint further alleges that the managers received a May 12, 2003 "Billing Systems and Process Assessment" prepared by an independent consultant which indicated that it was very difficult to obtain timely and reliable billing data from the company. Viewed in a light most favorable to the plaintiff, these alleged facts "raise a reasonable expectation that discovery will reveal evidence," that indicates a lack of good faith and a conscious lack of oversight on the part of the managers. *Bell Atl. Corp.*, 127 S.Ct. at 1965. The complaint, therefore, states a claim against the managers for breach of their fiduciary duty of loyalty.[105]

The plaintiff's claim that the managers consciously disregarded their fiduciary responsibilities is based in large part on their failure to respond promptly to information given to them by Brodeur and the independent consultant. The Trivest Manager Defendants argue that the plaintiff improperly characterizes the information which they received and, in turn, offer their own characterization. They argue that nothing in the reports identifies the type of improper conduct which would give rise to an affirmative duty to act. Regardless of any merit these arguments may ultimately have, at this point "[a]ll factual allegations made by the plaintiff are deemed admitted ... and ambiguous allegations must be construed in the plaintiff's favor." *Murphy v. Sofamor Danek Group, Inc. (In re Sofamor Danek Group, Inc.)*, 123 F.3d 394, 400 (6th Cir.1997) (citations omitted). Consequently, these arguments are misplaced at this stage in the proceeding.

For these reasons, the Trivest Manager Defendants' request to dismiss count III for failure to state a claim is denied.

## CONCLUSION

For the reasons stated, the motions to dismiss filed by the Zelch Defendants and the Trivest Manager Defendants are denied. The plaintiff is ordered to amend count I within 10 days to bring it into compliance with civil rule 9. A separate order will be entered to reflect this decision.

---

105. The plaintiff also argues that he has stated a claim for breach of the manager's duty of loyalty based on their approval of the mezzanine debt and their failure to monitor the Zelch defendants and prevent their self-dealing, and that he has stated a claim for breach of their duty of care based on their agreeing to proceed with the LBO in April and June 2003 and by agreeing to the adjustment of the EBITDA figure for 2002. Based on the conclusion that the plaintiff has stated a claim for oversight liability, the parties' arguments as to these claims need not be addressed at this point in the proceeding.